[No. S131641. July 20, 2006.]

GEORGE KIBLER, Plaintiff and Appellant, v.
NORTHERN INYO COUNTY LOCAL HOSPITAL DISTRICT et al.,
Defendants and Respondents.

194

**COUNSEL**

Donald W. Odell for Plaintiff and Appellant.

Catherine I. Hanson, Gregory M. Abrams and John D. Harwell for California Medical Association as Amicus Curiae on behalf of Plaintiff and Appellant.

Horvitz & Levy, David M. Axelrad, Jon B. Eisenberg, Jeremy D. Rosen; DiCaro, Coppo & Popcke, Carlo Coppo, Srinivas Hanumadass; and Douglas Buchanan for Defendants and Respondents.

Manatt, Phelps & Phillips, Barry S. Landsberg, Terri D. Keville and Doreen Wener Shenfeld for Catholic Healthcare West and the Regents of the University of California as Amici Curiae on behalf of Defendants and Respondents.

Stephan, Oringher, Richman & Theodora, Harry W. R. Chamberlain II, Robert M. Dato and Brian P. Barrow for Association of Southern California Defense Counsel as Amicus Curiae on behalf of Defendants and Respondents.

Lois Richardson; Foley & Lardner, Lowell C. Brown, Sarah G. Benator and Patricia M. Kosich for California Hospital Association as Amicus Curiae on behalf of Defendants and Respondents.

OPINION

KENNARD, J.—Code of Civil Procedure section 425.16 sets out a procedure for striking complaints in harassing lawsuits that are commonly known as SLAPP suits (strategic lawsuits against public participation), which are brought to challenge the exercise of constitutionally protected free speech rights.[1] Is this procedure available in a lawsuit brought by a hospital staff physician and arising out of a disciplinary recommendation by the hospital's peer review committee? We conclude that it is, and therefore affirm the Court of Appeal.

I

Beginning in 1979, Northern Inyo Hospital, an acute-care facility in Bishop, California, granted staff privileges to Dr. George Kibler, a physician and surgeon. On December 20, 2001, after a series of hostile encounters between Kibler and other staff members, the hospital brought an action against Kibler, seeking an injunction under section 527.8 against workplace violence. The next day, the hospital's peer review committee summarily suspended Kibler from its medical staff based on his "continuing and recently escalating unprofessional conduct of extremely hostile and threatening verbal assaults, threats of physical violence, including assault with a gun, and related erratic actions of a hostile nature toward nursing and administrative personnel . . . ."

On January 3, 2002, Kibler entered into a written agreement with the hospital reinstating his staff privileges. The agreement specifically required that Kibler refrain from hostile, violent, intimidating, or demeaning conduct toward hospital personnel, and that he not keep or carry a firearm on the premises. In addition, the agreement included a general release by Kibler of "all damages of any and all kind and nature" arising out of his summary suspension from the hospital's staff. On January 22, 2002, based on a stipulation by the hospital and Kibler, the trial court entered a permanent injunction requiring Kibler to attend anger-management classes and barring him from bringing any firearm to the hospital.

On December 13, 2002, Kibler filed this action against the hospital, and against certain physicians and nurses, seeking damages under a variety of theories including defamation, abuse of process, and interference with Kibler's practice of medicine.[2] In less than a week, the hospital responded by

---

[1] Further undesignated statutory references are to the Code of Civil Procedure.

[2] For simplicity's sake, we refer to defendants collectively as "the hospital" or "defendant hospital."

moving under section 425.16 to strike Kibler's complaint as a SLAPP suit, that is a lawsuit brought solely to harass the defendants. The hospital argued, and the trial court agreed, that Kibler's lawsuit arose out of the hospital's peer review proceeding against Kibler and that hospital peer review was an "official proceeding" qualifying for the anti-SLAPP statute's motion to strike. Accordingly, the trial court struck Kibler's complaint and dismissed his lawsuit. The Court of Appeal affirmed. We granted Kibler's petition for review to decide whether a hospital peer review proceeding is an "official proceeding authorized by law" within the meaning of section 425.16 and thus subject to a special motion to strike as a SLAPP suit.

## II

Enacted in 1992, section 425.16 sets out the procedure for filing a special motion to strike certain lawsuits that are "brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a), added by Stats. 1992, ch. 726, § 2, p. 3523.) Because section 425.16 allows for the early dismissal of SLAPP suits, it is often called the "anti-SLAPP" statute. In enacting that statute, the Legislature declared that "it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process." To achieve that goal, the Legislature stated, the anti-SLAPP statute "shall be construed broadly." (§ 425.16, subd. (a).)

Recently, in *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192 [25 Cal.Rptr.3d 298, 106 P.3d 958], we discussed the anti-SLAPP statute's effect on SLAPP suits: "Because these meritless lawsuits seek to deplete 'the defendant's energy' and drain 'his or her resources' (*Simmons v. Allstate Ins. Co.* (2001) 92 Cal.App.4th 1068, 1074 [112 Cal.Rptr.2d 397]), the Legislature sought ' "to prevent SLAPPs by ending them early and without great cost to the SLAPP target" ' (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 65 [124 Cal.Rptr.2d 507, 52 P.3d 685])." Section 425.16 sets out a procedure for the trial court to evaluate the merits of the lawsuit, "using a summary-judgment-like procedure at an early stage of the litigation." (*Varian Medical Systems, Inc., supra*, 35 Cal.4th at p. 192.) "In doing so, section 425.16 seeks to limit the costs of defending against [a SLAPP suit]. (See *Equilon Enterprises*, at p. 65 [noting that the 'short time frame for anti-SLAPP filings and hearings' and the 'stay of discovery' pending resolution of the motion evidences the Legislature's intent to minimize the litigation costs of SLAPP targets].)" (*Ibid.*)

■ Section 425.16, subdivision (b)(1) provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Subdivision (e) of section 425.16 defines the phrase " 'act in furtherance of a person's right of petition or free speech . . . in connection with a public issue' " to include: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or *any other official proceeding authorized by law*; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or *any other official proceeding authorized by law*; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (Italics added.) A defendant who invokes either subparagraph (1) or subparagraph (2) of subdivision (e) of section 425.16, the anti-SLAPP statute, need not "separately demonstrate that the statement concerned an issue of public significance." (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1123 [81 Cal.Rptr.2d 471, 969 P.2d 564].)

■ At issue here is the meaning of the statutory phrase "any other official proceeding authorized by law," which appears in both subparagraphs (1) and (2) of subdivision (e) of section 425.16, the anti-SLAPP statute. These two subparagraphs (both defining acts in furtherance of the rights of petition and of free speech) differ in that subparagraph (1) is limited to oral and written statements and writings actually made in the course of certain specified proceedings, while subparagraph (2) includes statements made "in connection with" those proceedings. Here, the trial court found that Kibler's lawsuit against the hospital arose out of oral or written statements or writings made "in connection with" (but not during the course of) the hospital's peer review proceeding that resulted in Kibler's summary suspension. Therefore, we are concerned here solely with subparagraph (2) of subdivision (e) of section 425.16, and not with subparagraph (1) of subdivision (e). As we explain below, a hospital's peer review qualifies as "any other official proceeding authorized by law" under subparagraph (2) of subdivision (e) and thus a lawsuit arising out of a peer review proceeding is subject to a special motion under section 425.16 to strike the SLAPP suit.

In construing the language of section 425.16, the anti-SLAPP statute, we apply well-established principles of statutory construction. Our goal is to determine the Legislature's intent in enacting the statute " 'so that we may adopt the construction that best effectuates the purpose of the law.' " (*City of Burbank v. State Water Resources Control Bd.* (2005) 35 Cal.4th 613, 625 [26 Cal.Rptr.3d 304, 108 P.3d 862].) In doing so, we look first to the statutory language, which generally is " 'the most reliable indicator of legislative intent.' " (*Ibid.*) Moreover, we give the words of the statute " 'their ordinary and usual meaning,' " construing them in their statutory context. (*Fitch v. Select Products Co.* (2005) 36 Cal.4th 812, 818 [31 Cal.Rptr.3d 591, 115 P.3d 1233].)

The Legislature has decreed that courts "broadly" construe the anti-SLAPP statute to further the legislative intent of encouraging "continued participation in matters of public significance" by preventing the chilling of such participation "through abuse of the judicial process." (§ 425.16, subd. (a).) Here, the trial court and the Court of Appeal concluded that a hospital's peer review procedure qualifies as an "official proceeding authorized by law" under section 425.16, subdivision (e)(2) because that procedure is required under Business and Professions Code section 805 et seq., governing hospital peer review proceedings. We agree.

Peer review is the process by which a committee comprised of licensed medical personnel at a hospital "evaluate[s] physicians applying for staff privileges, establish[es] standards and procedures for patient care, assess[es] the performance of physicians currently on staff," and reviews other matters critical to the hospital's functioning. (*Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 10 [56 Cal.Rptr.2d 706, 923 P.2d 1] (*Arnett*).) As we recognized in *Arnett, supra*, 14 Cal.4th at page 12, peer review serves a hospital's self-interest: For example, a hospital may remove a physician from its staff as a means to reduce its exposure to possible malpractice liability. But peer review of physicians also serves an important public interest. Hospital peer review, in the words of the Legislature, "is essential to preserving the highest standards of medical practice" throughout California. (Bus. & Prof. Code, § 809, subd. (a)(3).)

To this end, the Business and Professions Code sets out a comprehensive scheme that incorporates the peer review process into the overall process for the licensure of California physicians. Under California Business and Professions Code section 809, subdivision (a)(8), acute-care facilities, such as the hospital here, must include in their bylaws a provision for conducting

peer review. And a hospital must report to the Medical Board of California (Medical Board), which licenses physicians, any hospital action that "restricts or revokes a physician's staff privileges as a result of a determination by a peer review body." (*Arnett, supra,* 14 Cal.4th at p. 11, citing Bus. & Prof. Code, § 805, subd. (b) [requiring notice to the Medical Board within 15 days of the action].)[3] Similarly, a hospital granting or renewing a physician's staff privileges must request a report from the Medical Board indicating whether the physician has at some other medical facility "been denied staff privileges, been removed from a medical staff, or had his or her staff privileges restricted." (Bus. & Prof. Code, § 805.5, subd. (a).) The failure to comply with this requirement is a misdemeanor. (*Id.,* § 805.5, subd. (c).) And the Medical Board itself must maintain a historical record for each of its licensees that includes, among other things, the "[d]isciplinary information" reported to the Medical Board resulting from actions by hospital peer review committees. (*Id.,* § 800, subd. (a)(4).)

As explained in Business and Professions Code section 809, subdivision (a)(5), "[p]eer review, fairly conducted, will aid the appropriate state licensing boards in their responsibility to regulate and discipline errant healing arts practitioners." Because a hospital's disciplinary action may lead to restrictions on the disciplined physician's license to practice or to the loss of that license, its peer review procedure plays a significant role in protecting the public against incompetent, impaired, or negligent physicians. (See *Arnett, supra,* 14 Cal.4th at pp. 7, 11.)

■ There is another attribute of hospital peer review that supports our conclusion that peer review constitutes an "official proceeding" under the anti-SLAPP law. A hospital's decisions resulting from peer review proceedings are subject to judicial review by administrative mandate. (Bus. & Prof. Code, § 809.8.) Thus, the Legislature has accorded a hospital's peer review decisions a status comparable to that of quasi-judicial public agencies whose decisions likewise are reviewable by administrative mandate. (See *Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 566–567 [38 Cal.Rptr.2d 139, 888 P.2d 1268] [adjudicatory decisions of the California Air Resources Board reviewable by administrative mandamus]; *McGill v. Regents of University of California* (1996) 44 Cal.App.4th 1776, 1785 [52 Cal.Rptr.2d 466] [Regents' quasi-judicial decisions reviewable by administrative mandate].) As such, hospital peer review proceedings constitute official proceedings authorized by law within the meaning of section 425.16, subdivision (e)(2).

---

[3] Under Business and Professions Code section 805, subdivision (b), the hospital here would have been required to report to the Medical Board its December 20, 2001 summary suspension of Dr. Kibler's staff privileges 15 days thereafter, on January 4, 2002. But on January 3, 2002, one day before that deadline, the hospital and Kibler entered into an agreement reinstating his staff privileges. (See p. 196, *ante.*)

■ As we mentioned earlier, the Legislature has granted to individual hospitals, acting on the recommendations of their peer review committees, the primary responsibility for monitoring the professional conduct of physicians licensed in California. In that respect, these peer review committees oversee "matters of public significance," as described in the anti-SLAPP statute. (§ 425.16, subd. (a).) As noted in the joint amicus curiae brief of Catholic Healthcare West and The Regents of the University of California filed on behalf of defendant hospital, membership on a hospital's peer review committee is voluntary and unpaid, and many physicians are reluctant to join peer review committees so as to avoid sitting in judgment of their peers. To hold, as plaintiff Kibler would have us do, that hospital peer review proceedings are *not* "official proceeding[s] authorized by law" within the meaning of section 425.16, subdivision (e)(2), would further discourage participation in peer review by allowing disciplined physicians to file harassing lawsuits against hospitals and their peer review committee members rather than seeking judicial review of the committee's decision by the available means of a petition for administrative mandate.

According to the California Medical Association (CMA), amicus curiae on behalf of plaintiff Kibler, the phrase "any other official proceeding authorized by law" in section 425.16, subdivision (e)(2), pertains only to proceedings before *governmental entities* and thus does not include a hospital's peer review proceedings. In support, the CMA cites *Hackethal v. Weissbein* (1979) 24 Cal.3d 55 [154 Cal.Rptr. 423, 592 P.2d 1175] (*Hackethal*), a four-to-three decision of this court (Newman, J., joined by Bird, C. J., Mosk, J. and Manuel, J.; Tobriner, J. dissenting, joined by Clark, J. and Richardson, J.). In *Hackethal*, the majority held that the phrase "any other official proceeding authorized by law" appearing in subdivision (b)(3) of Civil Code section 47 (the "official-proceedings" privilege), a statute different from the one involved here, was limited to "government agencies." (*Hackethal, supra,* at p. 61.) The CMA asserts that the same construction governs here. We are not persuaded.

■ The statutory construction rule the CMA invokes here, that identical statutory language should be interpreted the same way, applies only when the statutes in question cover "the same or an analogous subject" matter. (*Estate of Griswold* (2001) 25 Cal.4th 904, 915–916 [108 Cal.Rptr.2d 165, 24 P.3d 1191]; accord, *Walker v. Superior Court* (1988) 47 Cal.3d 112, 132 [253 Cal.Rptr. 1, 763 P.2d 852].) That cannot be said of the official-proceedings privilege (Civ. Code, § 47) involved in *Hackethal, supra,* 24 Cal.3d 55 and the anti-SLAPP statute (§ 425.16), which is at issue here.

The official-proceedings privilege is a substantive rule of law, whereas the anti-SLAPP statute is a procedural device to screen out meritless claims. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 737 [3 Cal.Rptr.3d 636, 74 P.3d 737].)

Moreover, *Hackethal* itself did not consider whether the official-proceedings privilege was available at the hospital peer review proceedings required under Business and Professions Code section 809, subdivision (a)(8). Rather, the issue in that case was whether a private medical society hearing qualified as an official proceeding authorized by law. (*Hackethal, supra,* 24 Cal.3d at p. 58.) Thus, contrary to amicus curiae CMA's argument, *Hackethal* is not authority for the proposition that hospital peer review is not an "official proceeding" within the meaning of section 425.16, subdivision (e)(2).

Similarly unpersuasive is amicus curiae CMA's further reliance on the Legislature's amendment of Civil Code section 47 to reject the holding of *Hackethal, supra,* 24 Cal.3d 55. That amendment added subdivision (b)(4) to Civil Code section 47, to clarify that Civil Code section 47's official-proceedings privilege applied to those proceedings authorized by law that are reviewable by administrative mandate, such as hospital peer review.[4] (See p. 200, *ante.*) Amicus curiae CMA argues that, in omitting from subdivision (e)(2) of the anti-SLAPP statute (§ 425.16) the language (referring to judicial review by administrative mandate) that was added as subdivision (b)(4) to the official-proceedings privilege statute (Civ. Code, § 47), the Legislature indicated its intent that the anti-SLAPP provisions *not* apply unless the proceeding is before a government entity. We disagree.

The legislative history pertaining to the addition of subdivision (b)(4) to Civil Code section 47 (the official-proceedings privilege) reflects the Legislature's agreement with the dissenting justices in *Hackethal* that the Civil Code section 47 privilege applied to "quasi-judicial proceedings conducted by a medical 'peer review' authority." (*Hackethal, supra,* 24 Cal.3d at p. 62 (dis. opn. of Tobriner, J.); see Sen. Com. on Judiciary, Background Information on Assem. Bill No. 478 (1979–1980 Reg. Sess.) May 14, 1979, p. 2 ["In the recent case of <u>Hackethal v. Weissbein,</u> the Supreme Court decided that . . . the absolute privilege of Section 47 [was] unavailable in the context of private, quasi-judicial hearings. [¶] This proposed amendment to Section 47 would clarify that the legislature had no such intent."]; Governor's Off., Enrolled Bill Rep. on Assem. Bill No. 478 (1978–1979 Reg. Sess.) June 25, 1979, p. 1 [This bill "codifies Justice Tobriner's strong dissent in

---

[4] As relevant here, Civil Code section 47 now states: "A privileged publication or broadcast is one made: [¶] . . . [¶] (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to [administrative mandate]."

Hackethal."].) Thus, in the Legislature's view, Civil Code section 47 as originally worded (without the addition of the reference to administrative mandate) included within that statute's official-proceedings privilege the proceedings of a medical peer review committee. To clarify that point, the Legislature amended Civil Code section 47 to add subdivision (b)(4), which refers to administrative mandate. But the history of that amendment reveals that in the Legislature's view, no specific language mentioning administrative mandate was necessary to bring medical peer review within the official-proceedings privilege. "The Legislature is a pragmatic political body; its primary concern is not to study and refine the language used in judicial decisions, but to accomplish practical results. As such, it is unlikely to analyze and rewrite broad judicial language as an abstract exercise; it is far more likely to revise the 'bottom line.' " (*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1157 [278 Cal.Rptr. 614, 805 P.2d 873].)

In short, nothing in the legislative history of the Legislature's 1979 amendment of the official-proceedings privilege in Civil Code section 47 supports amicus curiae CMA's contention here that the Legislature's 1992 enactment of the anti-SLAPP statute intended the phrase "other official proceeding authorized by law" in subdivision (e)(2) of section 425.16 to be limited to proceedings before governmental entities.[5]

Because we conclude that defendant hospital was entitled under section 425.16, subdivision (e)(2), to file its special motion to strike plaintiff Kibler's complaint as a SLAPP suit, we need not decide whether that remedy would likewise have been available under subdivision (e)(4) of section 425.16 on the theory that hospital peer review proceedings qualify as "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

---

[5] Recently, the Court of Appeal in *Fontani v. Wells Fargo Investments, LLC* (2005) 129 Cal.App.4th 719 [28 Cal.Rptr.3d 833] addressed the anti-SLAPP statute in a lawsuit arising in connection with proceedings of the National Association of Securities Dealers (NASD), which "is the primary regulatory body for the [securities] broker-dealer industry" (*Sparta Surgical v. Nat. Ass'n of Sec. Dealers* (9th Cir. 1998) 159 F.3d 1209, 1210) and "a regulatory surrogate" for the federal Securities and Exchange Commission (*Fontani, supra*, at p. 729). *Fontani* simply assumed, refraining from deciding, that to qualify as an "official" body under the anti-SLAPP statute, (§ 425.16), the entity must be one that exercises governmental power. (*Fontani, supra*, at p. 729.) In addition, *Fontani* distinguished the NASD in several respects from a hospital peer review committee in concluding that "the NASD is the type of regulatory body before which communication is routinely protected by the anti-SLAPP law." (*Fontani, supra*, p. 730.) We express no view on the court's assessment of the NASD, but we disapprove *Fontani v. Wells Fargo Investments, supra*, 129 Cal.App.4th 719, to the extent it conflicts with our conclusion here.

## DISPOSITION

The judgment of the Court of Appeal is affirmed.

George, C. J., Baxter, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.