Filed 11/4/15  Nambiar v. The Regents of the Univ. of Calif. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| KRISHNAN NAMBIAR, | |
| Plaintiff and Respondent, | C073464 |
| v. | (Super. Ct. No. CVPO121928) |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA et al., | |
| Defendants and Appellants. | |

The University of California at Davis (the university) determined that organic chemical compounds stored in the laboratories assigned to chemistry professor Krishnan Nambiar posed a safety hazard.  The fire marshal closed the laboratories and the university arranged to remove the compounds.  Nambiar sued The Regents of the

1

University of California and an academic dean (collectively the Regents) for damages and injunctive relief, seeking, among other things, to stop the university from destroying the allegedly irreplaceable compounds.

The Regents filed a special motion to strike pursuant to Code of Civil Procedure section 425.16 (the anti-SLAPP motion).[1] The trial court denied the motion, ruling that the Regents did not meet their initial burden to show that Nambiar's fourth cause of action arose from protected speech or conduct.[2] The Regents appeal from the trial court's order denying the special motion to strike.

The Regents now contend the fourth cause of action arises from protected conduct because (a) it is based on the abatement process conducted pursuant to university policy, (b) it is also based on statements made in connection with an official proceeding, and (c) public policy supports granting the protections of the anti-SLAPP statute to the university's safety proceedings. The Regents further contend Nambiar cannot show that he is likely to prevail on the merits.

We conclude the Regents did not meet their initial burden under the anti-SLAPP statute to establish that the fourth cause of action arises from protected speech or conduct. Because the Regents do not meet their threshold burden, we need not address the second step of the analysis, whether Nambiar is likely to prevail on the merits.

We will affirm the trial court's denial of the special motion to strike.

BACKGROUND

---

[1] "SLAPP" is an acronym for strategic lawsuits against public participation. (*Kibler v. Northern Inyo County Local Hospital Dist*. (2006) 39 Cal.4th 192, 196.) Undesignated statutory references are to the Code of Civil Procedure.

[2] Although the Regents' motion to strike stated variously that it sought to strike the first amended complaint, selected claims, or the fourth cause of action, the appeal focuses on the fourth cause of action.

The employment of Professor Nambiar, whose research focused on designing "molecules with chemical and biological applications, including the treatment of Alzheimer's disease and cancer," was contingent on continued research and publishing of scientific articles. Over a period of years, Nambiar created certain organic chemical compounds to further his research. He alleged that the chemical compounds were safe and harmless when stored under proper conditions. He stored them in glass and plastic bottles and vials in various refrigerators, freezers, shelves, cabinets, tubs and boxes in the four laboratories assigned to him. Nambiar further alleged that losing the compounds would have a devastating impact on his career and employment.

The university has detailed policies and procedures for the safe use, transportation, storage and disposal of hazardous chemicals on campus. A September 7, 2012 inspection of Nambiar's laboratories by campus safety experts revealed numerous violations of the policies and procedures. After a second inspection raised additional concerns, an external chemist determined the hazard level in the laboratories was so extreme that immediate remediation was required. The campus fire marshal ordered closure of the laboratories and implementation of a correction plan. The university sent Nambiar a report detailing the safety violations and stating when the chemical removal operation would begin. Over a week-long period of 12-hour days, a professional work crew packaged and removed 9,600 pounds of chemicals from Nambiar's laboratories.

After the clean up, there still remained over one thousand untested containers, consisting mostly of unmarked flasks, beakers and test tubes. Nambiar said 350 of those containers contained his indispensable compounds.

Nambiar alleges, however, that this was not the first closure of his assigned laboratories. He alleges a 2009 closure for various alleged violations, which he describes as a series of ongoing disputes between Nambiar and various university administrators, leading to an alleged altercation in 2010 in which an academic dean grabbed Nambiar's hand and pushed him.

3

Nambiar ultimately filed a lawsuit against the Regents. His first amended complaint asserted a first cause of action for battery, a second cause of action for assault, a third cause of action for intentional infliction of emotional distress, and a fourth cause of action for injunctive relief. The prayer sought general damages, medical expenses, lost earnings, and a permanent injunction enjoining the Regents from destroying the organic materials synthesized by Nambiar and requiring the Regents to prepare an itemized list of chemicals that had been or would be destroyed.

The Regents filed the anti-SLAPP motion, arguing that the gravamen of the fourth cause of action for injunctive relief is based on statements made before an official proceeding (§ 425.16, subd. (e)(1)), statements in connection with an issue under review in an official proceeding (§ 425.16, subd. (e)(2)), and statements and conduct made in furtherance of the right to petition and in connection with a public issue or matter of public concern (§ 425.16, subd. (e)(4)). During oral argument in the trial court, counsel for the Regents reported that there had been a series of meetings between Nambiar and university officials after the lawsuit was filed during which hundreds of Nambiar's compounds were designated for retention and the university promised to assign lab space for their storage; counsel for Nambiar agreed, but argued the lawsuit was not moot because the university could change its mind.

The trial court denied the anti-SLAPP motion. The trial court found that although Nambiar's fourth cause of action for injunctive relief was "prompted" by the underlying abatement process, the actual injunctive relief requested does not "arise" from it. The trial court concluded that the Regents did not meet their initial burden to establish that the fourth cause of action arose from protected speech or conduct. The trial court did not address whether Nambiar was likely to prevail on the merits.

DISCUSSION

I

4

The Regents contend the fourth cause of action arises from protected conduct because (a) it is based on the abatement process conducted pursuant to university policy, (b) it is also based on statements made in connection with an official proceeding, and (c) public policy supports granting the protections of the anti-SLAPP statute to the university's safety proceedings. Nambiar counters that his fourth cause of action does not arise from protected speech or conduct; it merely seeks to stop the destruction of his research materials.

The defining quality of a SLAPP action is that it "seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055.) To limit SLAPP actions, the legislature provided for an anti-SLAPP motion. (§ 425.16, subd. (b)(1).) "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (*Ibid.*)

Evaluating an anti-SLAPP motion requires two steps. First, the moving party must prove that the acts the plaintiff identified in the complaint as wrongful were taken in furtherance of the right of petition or free speech. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) If that showing is made, the court then determines whether there is a reasonable probability the plaintiff will prevail on the claim. (*Ibid.*)

Section 425.16, subdivision (b)(1) applies to a cause of action alleging harm from conduct that was in furtherance of the right of petition or free speech. (*Gallimore v. State Farm Fire & Casualty Ins. Co.* (2002) 102 Cal.App.4th 1388, 1397-1398.) The question is whether the cause of action is based on the protected speech or petitioning activity. (*Id.* at p. 1398.) A court looks to the gravamen of a complaint to determine whether it is

5

based on protected activity. (*McConnell v. Innovative Artists Talent & Literary Agency, Inc.* (2009) 175 Cal.App.4th 169, 177.)

In *Young v. Tri-City Healthcare Dist.* (2012) 210 Cal.App.4th 35, a doctor asserted a cause of action against a hospital district for denial of due process in a peer review proceeding that led to suspension of the doctor's hospital privileges. (*Id.* at pp. 54-56.) The doctor sought an administrative hearing that he claimed had been denied to him. (*Ibid.*) The trial court granted the hospital district's anti-SLAPP motion but the court of appeal reversed. (*Id.* at pp. 58-59) The court of appeal held that the cause of action for denial of due process was triggered by, but did not arise from, the protected activity because the doctor did not seek relief based on communicative acts. (*Ibid.*; cf. *Kibler v. Northern Inyo County Local Hosp. Dist.*, *supra*, 39 Cal.4th at p. 197 [claim based on harm caused by statements made in a hospital peer review proceeding was subject to anti-SLAPP motion].)

Likewise, in the case of *Episcopal Church Cases* (2009) 45 Cal.4th 467, the litigation was triggered by a clash of opinions on matters of religion, but it did not arise from protected activity. (*Id.* at pp. 477-478.) The gravamen of the action pertained to which party would control church property. (*Ibid.*) And in *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, the defendants argued that a claim for declaratory relief filed in state court should be stricken because it was in direct response to the filing of a federal action on the same subject. (*Id.* at p. 80.) The California Supreme Court determined that the gravamen of the state court complaint was not directed at the protected federal court proceeding but rather the dispute between the parties over interpretation of an ordinance. (*Ibid.*; accord, *Graffiti Protective Coatings, Inc. v. City of Pico Rivera* (2010) 181 Cal.App.4th 1207, 1218 [identifying and discussing numerous other cases decided on the same distinction].)

Here, we agree with the Regents that the abatement process was an official university proceeding based on perceived or actual threats to public safety. Any

statements made in the context of that proceeding were constitutionally protected, and litigation arising from them would be subject to an anti-SLAPP motion. (See *Vergos v. McNeal* (2007) 146 Cal.App.4th 1387, 1390-1392, 1396-1397 [university's statutory hearing procedures qualify as "official proceedings" under section 425.16 and a cause of action based on statements made by a hearing officer during such a proceeding was properly stricken].) But Nambiar does not claim that he was damaged by the words spoken during the process of closing or emptying his laboratories. He claims he was harmed by the actual or threatened destruction of tangible substances. Nambiar's fourth cause of action does not allege damages from the actual or implied criticism of his poor safety practices. Instead, the gravamen of the cause of action as pleaded is the fate of allegedly irreplaceable research materials. For that reason, we agree with the trial court that Nambiar's fourth cause of action was "*prompted* by the underlying abatement process, [but] the actual injunctive relief requested does not *arise* from it."

The Regents suggest that even their physical efforts to dispose of tangible substances should be protected in furtherance of public safety and that public policy supports granting the protection of the anti-SLAPP statute to such safety endeavors. We agree that keeping university laboratories safe is important and that it is worthy of public support. But the Regents have not cited any authority applying anti-SLAPP protections to tangible cleanup efforts, and we decline to do so here.

The special motion to strike was properly denied.

## II

The Regents further contend Nambiar cannot show that he is likely to prevail on the merits. Because the Regents have not met their threshold burden, we need not reach this second step of the two-step anti-SLAPP analysis. (See *Equilon Enterprises v. Consumer Cause, Inc*, *supra,* 29 Cal.4th at p. 67.)

## DISPOSITION

The trial court's order denying the special motion to strike is affirmed.

7

                                   /S/           

Mauro, J.

We concur:

       /S/           

Butz, Acting P. J.

       /S/          

Duarte, J.