Filed 8/1/23  Armstrong v. Nuttall CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JENNIFER ARMSTRONG, M.D., et al., | |
| Plaintiffs and Respondents, | G061416 |
| v. | (Super. Ct. No. 30-2021-01238416) |
| SYLVIA NUTTALL, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Deborah C. Servino, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Cameron Banks Law and Indira J. Cameron-Banks, for Defendant and Appellant.

CDF Labor Law, Todd R. Wulffson, Ashley A. Halberda, Alessandra C. Whipple, and Emily Gifford for Plaintiffs and Respondents.

\*          \*          \*

Defendant Sylvia Nuttall appeals from the court's order denying her special motion to strike (anti-SLAPP motion) under Code of Civil Procedure section 425.16.[1] The court found the claims asserted by plaintiffs Jennifer Armstrong (Armstrong), Jennifer Armstrong, M.D., P.C. (Armstrong PC), and Advanced Skincare Medcenter, Inc. (ADV) did not arise out of protected activity.

On appeal, defendant contends the court erred because the entire complaint seeks to punish her for engaging in protected activity. She claims her statements and conduct concerned Armstrong's allegedly illegal activities as a doctor that were harmful to patients. Defendant also argues plaintiffs cannot show a probability of prevailing on the merits of their claims.

For the reasons *infra*, we agree defendant met her burden of demonstrating some of plaintiffs' allegations arose from protected activity. We accordingly affirm the court's order in part and reverse it in part. Because the court did not reach a decision regarding the second prong of the anti-SLAPP analysis; i.e., whether plaintiffs demonstrated a probability of prevailing on the merits of their claims, we remand the case for a determination of that issue.

FACTS

*The Complaint*

In December 2021, plaintiffs filed the operative complaint against defendant. The complaint generally alleges the "lawsuit arises from intentionally false, misleading, and/or defamatory accusations made by [defendant] against [p]laintiffs, which has resulted in personal and business reputational damage and caused other harms to [p]laintiffs." According to the complaint, Armstrong is a doctor who specializes in the field of cosmetic dermatology and was employed by Armstrong PC and ADV as its chief

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

executive officer and medical director. Armstrong also is a cast member of the nationally televised reality show the Real Housewives of Orange County (RHOC). Armstrong PC and ADV are medical practices specializing in cosmetic dermatology.

The complaint alleges defendant was employed as an office manager by Armstrong PC and ADV from 2018 to 2021. When defendant was hired, plaintiffs allegedly provided an employee handbook and employee confidentiality agreement to defendant. Among other things, those documents restricted an employee's disclosure of trade secrets, proprietary information, or confidential information and further put employees on notice of their obligation to protect patient information. The documents also indicated employees were required to return company property and materials on or before their last day of work.

In October 2021, Armstrong PC and ADV allegedly terminated defendant "due to her theft of medical supplies and equipment and other gross misconduct." The complaint focuses on defendant's conduct after she was terminated, which included allegedly engaging in unlawful conduct to damage Armstrong's reputation. The complaint identifies the following unlawful conduct: (1) using Armstrong's login credentials to access or order unauthorized equipment and medication, to steal and delete employee and patient files, and to access Armstrong's personal medical information to defame Armstrong or make false claims to patients; (2) severing Armstrong PC and ADV's ability to communicate with patients by tampering with their phone system and forwarding calls to an unknown cell phone; and (3) contacting patients and informing them Armstrong was under criminal investigation and was dangerous.

In addition to the above conduct, the complaint alleges defendant "made false reports about Armstrong to regulatory agencies and licensing boards, including the California Medical Board, alleging that Armstrong engages in unprofessional conduct, including using unlawful filler and working under the influence of drugs, resulting in the California Medical Board investigating these false allegations." Defendant "also

3

contacted a Bravo television network producer of the RHOC, via text message, advising this individual to stay away from Armstrong PC, ADV, and Armstrong for the person's 'own protection.'" Defendant further "created and maintained a social media profile, impersonating Armstrong, a licensed medical professional, and used this platform to defame Armstrong's personal relationships, financial status, and professional skills."

Finally, the complaint alleges defendant disseminated patient lists to another former employee who also was terminated for gross misconduct. Defendant and the other former employee allegedly worked together to unlawfully contact patients and "wage false and damaging narratives about Armstrong and her practice."

Based on these allegations, the complaint alleges 10 causes of action: (1) defamation per se; (2) intentional infliction of emotional distress; (3) invasion of privacy; (4) trespass to chattels; (5) conversion; (6) negligent interference with prospective economic advantage; (7) intentional interference with prospective economic advantage; (8) breach of contract; (9) violation of Penal Code section 502; and (10) violation of Penal Code section 503.

With respect to the defamation claim, the complaint identifies the following alleged statements: (1) "a false accusation that . . . Armstrong committed a crime and is under criminal investigation"; (2) "a false accusation to patients and the California Medical Board that . . . Armstrong reports to her medical office to perform medical procedures under the influence of drugs"; and (3) "a false accusation that . . . Armstrong engages in medical malpractice, including warning patients not to seek Armstrong's services for their 'own protection,' accusations made via text messages and oral communications with patients (using highly-confidential HIPAA-protected information), staff, and the California Medical Board."

The invasion of privacy claim is based on Armstrong's reasonable expectation of privacy as to her log-in credentials for her personal and business information. The trespass to chattels and conversion claims are based on Armstrong PC

4

and ADV's right to possession of a patient contact list and defendant's possession of that property without their consent. The claims for negligent and intentional interference with prospective economic advantage are based on defendant allegedly causing existing or prospective employees and patients to change their business relationship with Armstrong PC and ADV. The breach of contract claim is based on defendant's alleged breach of her employment contracts, which included disseminating plaintiffs' confidential information. Finally, the claims for violation of Penal Code sections 502 and 503 are based on defendant's unauthorized taking, copying, and using of information from plaintiffs' computers and systems.

*The Anti-SLAPP Motion*

In February 2022, defendant filed an anti-SLAPP motion detailing extensive facts outside the scope of the complaint. Defendant claimed that, throughout her employment, she witnessed plaintiffs commit crimes endangering patients' health and safety. Among other things, this included defendant's belief that Armstrong engaged the services of another unlicensed physician, Dr. Donald Woo Lee, who was a convicted felon, received foreign products from Dr. Lee, refilled vials of Botox with a different pre-mixed product, and used illegally prescribed narcotics.

Defendant claimed she voiced concerns about plaintiffs' unlawful conduct. Prior to her termination, she contacted the Orange County Register in September 2021 to encourage them to publish a story about Dr. Lee. At the end of September 2021, the Food and Drug Administration (FDA) contacted defendant as a result of an inquiry she had made about products Dr. Lee provided to Armstrong. Defendant spoke to the FDA and the Federal Bureau of Investigation (FBI) and agreed to help them. About a week later, defendant's employment was terminated in October 2021.

After her termination, defendant claimed she reached out to several individuals. First, she reached out to one of Armstrong's former patients and emphasized

5

she received the patient's contact information from a reporter for the Orange County Register. Second, in December 2021, defendant sent a text message to a Bravo television network producer who worked on the RHOC show and was Armstrong's patient. In the text message, defendant asked for the network's legal counsel, asked that "nothing slanderous [be] aired against [her]," noted she was a witness to a crime and had cooperated with the FDA and FBI, and asked for confidentiality. Third, defendant contacted a woman who she had previously worked with and introduced to Armstrong. In a text message, defendant warned the woman to stop her daughter from receiving treatments from Armstrong. Fourth, in January 2022, defendant sent a copy of an article published in the Orange County Register about Armstrong and Dr. Lee to a social media influencer. Defendant claimed she previously convinced this person to seek treatment from Armstrong.

After reciting the above facts, defendant concluded plaintiffs' claims arose from protected activity because they were based on: (1) defendant's conduct in connection with a judicial or official proceeding authorized by law (§ 425.16, subd. (e)(1)-(2)); and (2) defendant's conduct in furtherance of free speech in connection with a public issue or an issue of public interest (*Id*., subd. (e)(3)-(4)). With respect to the former, defendant argued her statements to the FBI were protected. She also claimed that "[t]o the extent [she] highlighted Dr. Donald Woo Lee's past criminal conduct and likely ongoing criminal conduct to investigative reporters or law enforcement in order to sound alarm bells for the public at large does not magically become unprotected conduct . . . ." With respect to speech in connection with a public issue or an issue of public interest, defendant argued all of her statements and conduct were protected because they involved matters and individuals of public interest. She emphasized she "was sounding the alarm bells about patient health and safety as it related to the delivery of services in the medical office of [a] reality television star [and] a publicly convicted federal felon engaged in the

6

unlicensed practice of medicine and sale of banned substances . . . ." Finally, defendant argued plaintiffs could not show a probability of success on the merits.

*The Court's Order*

The court denied the anti-SLAPP motion and found defendant did not meet her burden of demonstrating plaintiffs' claims arose from protected activity. The court noted the anti-SLAPP motion referenced three allegations in the complaint, but defendant did "not attempt to identify particular allegations based on protected activity that she contends should be considered separately from unprotected activity." Instead, defendant moved to strike the entire complaint, rather than causes of action or claims within it. While defendant argued the "'gravamen'" of the complaint is for defamation, the court emphasized other claims involved unprotected activity. For example, the court noted the complaint included "allegations of theft, unauthorized access, or misappropriation of information," which were the basis of the fourth (trespass to chattels), fifth (conversion), ninth (violation of Pen. Code, § 502), and tenth (violation of Pen. Code, § 503) causes of action. The court accordingly concluded defendant did not meet her burden and did not reach the second prong of the anti-SLAPP analysis.

Defendant timely filed a notice of appeal.

DISCUSSION

*Applicable Law and Standard of Review*

"[T]he anti-SLAPP statute is designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern. [Citations.] To that end, the statute authorizes a special motion to strike a claim 'arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in

connection with a public issue.'" (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883-884.)

The trial court conducts a potentially two-step inquiry to evaluate an anti-SLAPP motion. (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*).) First, the court must decide whether the defendant has met its burden of establishing the plaintiff's claim *arises from* protected activity in which the defendant has engaged. (*Ibid.*) Second, assuming the defendant has met its burden, the court determines whether the plaintiff has established "there is a probability . . . the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) In meeting this burden, "the plaintiff must show the claim has 'at least "minimal merit."'" (*Bonni*, at p. 1009.)

We review the court's ruling de novo, applying the legal principles discussed above. (*Falcon Brands, Inc. v. Mousavi & Lee, LLP* (2022) 74 Cal.App.5th 506, 518.)

*Protected Activity*

In determining whether plaintiffs' claims arise from protected activity, "the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.) "At this first step, courts are to 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' [Citation.] The defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity." (*Bonni, supra*, 11 Cal.5th at p. 1009.) "We review the parties' pleadings, declarations, and other supporting documents at this stage of the analysis only 'to determine what conduct is actually being challenged, not to determine whether the conduct is actionable.'" (*Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 490-491.)

8

If a plaintiff pleads mixed causes of action based on allegations of both protected and unprotected activity, "analysis of an anti-SLAPP motion is not confined to evaluating whether [the] entire cause of action, as pleaded by the plaintiff, arises from protected activity or has merit." (*Bonni, supra*, 11 Cal.5th at p. 1010.) Instead, courts analyze each act supplying a basis for relief to determine whether the acts are protected. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 393, 395 (*Baral*).) "So long as a 'court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached' with respect to these claims." (*Bonni*, at p. 1010.) But "[a]llegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." (*Baral*, at p. 394.)

The anti-SLAPP statute identifies four categories of protected activity: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or on an issue of public interest." (§ 425.16, subd. (e)(1)-(4).)

At the outset, we emphasize defendant had the burden of pointing out the aspects of the complaint arising from protected activity. (*Pech v. Doniger* (2022) 75 Cal.App.5th 443, 459 ["If a count pleaded in the complaint encompasses multiple claims and the moving party fails to identify how the acts underlying some of those claims are protected activity, then the moving party has not met its burden with respect to those unidentified claims"].) Defendant generally argues *all* of the causes of action are based on her "'blowing the whistle'" on plaintiffs' illegal conduct. In her anti-SLAPP motion,

9

defendant likewise asserted the entire lawsuit arose from conduct that qualified as protected activity. But defendant did not identify any individual allegation the court should have stricken in the anti-SLAPP motion. (*Baral*, *supra*, 1 Cal.5th at p. 396 [the defendant bears the burden "of identifying all allegations of protected activity, and the claims for relief supported by them"].) In any event, we disagree with defendant's assertion that "[e]ach and every [cause of action] in the [c]omplaint is premised on the allegation that [defendant] levied falsehoods against Armstrong." As discussed, *ante*, many of the causes of action arise from alleged theft-based activity or misconduct.

### A. Allegations Providing Context

Many of the acts and statements defendant does identify are outside the scope of the complaint. For example, defendant notes she communicated with the FBI, FDA, and a reporter for the Orange County Register. But these communications do not supply any element of plaintiffs' claims. Indeed, the complaint does not allege defendant's contacts with the FBI, FDA, or a reporter support any of the causes of action. Plaintiffs confirm as much as they state their complaint does not challenge statements defendant made to law enforcement or to a reporter for the Orange County Register. "[A] claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1060.) "Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." (*Baral*, *supra*, 1 Cal.5th at p. 394.)

10

B. Communications with Patients and the California Medical Board

Defendant next contends her communications with three of Armstrong's patients are protected. We agree these communications are protected under section 425.16, subdivision (e)(4).

"The inquiry under [section 425.16, subdivision (e)(4)] calls for a two-part analysis . . . . First, we ask what 'public issue or . . . issue of public interest" the speech in question implicates—a question we answer by looking to the content of the speech. [Citation.] Second, we ask what functional relationship exists between the speech and the public conversation about some matter of public interest." (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 149-150 (*FilmOn*).)

"In articulating what constitutes a matter of public interest, courts look to certain specific considerations, such as whether the subject of the speech or activity 'was a person or entity in the public eye' or 'could affect large numbers of people beyond the direct participants' [citation]; and whether the activity 'occur[red] in the context of an ongoing controversy, dispute or discussion' [citation], or 'affect[ed] a community in a manner similar to that of a governmental entity.'" (*FilmOn*, *supra*, 7 Cal.5th at pp. 145-146.) In conducting the second inquiry, a court must consider whether the speech "'in some manner itself contribute[s] to the public debate.'" (*Id.* at p. 150.) A court considers "the particular context of the speech, including the speaker's identity; the 'purpose' of the speech; the nature of the audience and the intended audience; and the 'timing' and 'location' of the communication." (*Murray v. Tran* (2020) 55 Cal.App.5th 10, 30.)

Here, the complaint alleges defendant made defamatory statements including: (1) "a false accusation that . . . Armstrong committed a crime and is under criminal investigation"; (2) "a false accusation to patients and the California Medical Board that . . . Armstrong reports to her medical office to perform medical procedures under the influence of drugs"; and (3) "a false accusation that . . . Armstrong engages in medical malpractice, including warning patients not to seek Armstrong's services for

11

their 'own protection,' accusations made via text messages and oral communications with patients (using highly-confidential HIPAA-protected information), staff, and the California Medical Board." The complaint claims defendant's "false reports" included accusations that Armstrong was "using unlawful filler and working under the influence of drugs, resulting in the California Medical Board investigating these false allegations."

To provide context to these communications, defendant submitted evidence of her contacts with three patients. First, after plaintiffs terminated defendant's employment, defendant contacted a patient who told defendant she intended to file a lawsuit against Armstrong. Plaintiffs state this communication is irrelevant because it "is not at issue in the underlying [a]ction nor was it contemplated by [p]laintiffs at the time of filing." We accordingly need not address this statement. Second, defendant warned another woman to stop sending her daughter to Armstrong for treatments because it might not be safe. Third, defendant sent a copy of an article about Armstrong and Dr. Lee to another patient. The article supposedly concerned Dr. Lee working in Armstrong's office without a medical license and described the nature of a patient's lawsuit against Armstrong. The latter two communications generally concerned whether patients were provided legal and safe treatment and whether Armstrong was acting unethically. In other words, they concerned an issue of public interest because they pertained to the quality of patient care and Armstrong who was a person in the public eye. (*Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192, 201 [suggesting the professional conduct of California licensed physicians are "'matters of public significant'"].) They also promoted public conversation because the communications were with patients, implicated Armstrong's professional competence, and appear to have taken place around the same time as the FBI's involvement. To the extent plaintiffs' claims are based on defendant's communications with additional patients who the parties have not identified, the complaint has narrowed the

communications at issue—various "false accusations" defendant made about Armstrong. Those allegations arise from protected activity for the same reasons above.

Although the parties do not specifically address the "false accusations" made to the California Medical Board, the complaint alleges defendant reported that Armstrong used unlawful filler and worked under the influence of drugs, which resulted in the California Medical Board investigating those claims. These allegedly defamatory statements were protected as statements made in connection with an issue under consideration in an official proceeding. (§ 425.16, subd. (e)(2); *Bonni, supra*, 11 Cal.5th at p. 1017 [reporting a surgeon's summary suspensions to the California Medical Board were protected under section 425.16, subdivision (e)(2)].)

Plaintiffs generally argue defendant's "lies and misinformation . . . is not protected conduct." This does not address whether the statements or activity supporting plaintiffs' claims is based on defendant's exercise of free speech. Instead, plaintiffs "conflate[] the threshold question of whether [their] claims are based on protected activity and the question whether [they have] established a probability of prevailing on the merits." (*Collier v. Harris* (2015) 240 Cal.App.4th 41, 53.)

For the foregoing reasons, the allegations regarding defendant's communications with patients and the Medical Board of California are protected activity.


C. Communications with the RHOC Producer

With respect to defendant's communications with a producer of the RHOC who was also Armstrong's patient, the complaint alleges defendant "contacted a Bravo television network producer of the RHOC, via text message, advising this individual to stay away from Armstrong PC, ADV, and Armstrong for the person's 'own protection.'" In a declaration in support of her anti-SLAPP motion, defendant provided evidence of a text message she sent to the producer. In the text message, defendant asked for the network's legal counsel and asked that "nothing slanderous [be] aired against [her]." She

13

noted she was a witness to a crime that she reported, she was cooperating with the FDA and FBI, and she wanted to maintain confidentiality in the matter. She further stated she would provide her attorney's information to the network's legal counsel and would "assist in anything [she could] as cleared by [her] attorney." When viewed in context, this communication did not further the public discourse even if it referred to issues of public interest. (*FilmOn.com Inc.*, *supra*, 7 Cal.5th at p. 150 [statement cannot simply refer to subject of public interest but must "'contribute to the public debate'"].) Indeed, plaintiff concedes the communication "was discrete and limited intended [*sic*] to protect herself . . . ."

### D. Allegations of Theft and Misappropriation

Finally, the complaint alleges defendant engaged in unlawful conduct, which included her unauthorized use of Armstrong's login credentials, tampering with plaintiffs' phone system, and unauthorized access and possession of personal information, patient lists, and information from plaintiffs' computers. This conduct fits none of the protected categories and is the basis for the third (invasion of privacy), fourth (trespass to chattels), fifth (conversion), eighth (breach of contract), ninth (violation of Pen. Code, § 502), and tenth (violation of Pen. Code, § 503) causes of action. Because the basis of liability is not speech or protected activity, defendant has not met her burden as to the first prong of the anti-SLAPP analysis for these causes of action. (See *Flatley v. Mauro* (2006) 39 Cal.4th 299, 317 [unlawful conduct is not protected under the anti-SLAPP statute].)

The same allegations of theft and misconduct support, in part, the second (intentional infliction of emotional distress), sixth (negligent interference with prospective economic advantage), and seventh (intentional interference with prospective economic advantage) causes of action. To the extent these latter causes of action are

14

based on this conduct, defendant has not met her burden as to the first prong of the anti-SLAPP analysis.

*Probability of Success on the Merits*

Our Supreme Court has described the second step of the anti-SLAPP analysis "as a 'summary-judgment-like procedure.' [Citation.] The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. [Citation.] '[C]laims with the requisite minimal merit may proceed.'" (*Baral*, *supra*, 1 Cal.5th at pp. 384-385, fn. omitted.)

Although the parties have briefed the merits on appeal, the trial court stopped its analysis at the first step of the anti-SLAPP analysis and did not reach the merits. We accordingly remand for the court to consider whether plaintiffs have established a probability of prevailing in the first instance.

*Attorney Fees*

Finally, defendant contends she is entitled to attorney fees if we reverse the court's order. Because we reverse in part and remand for the court to conduct the second step of the anti-SLAPP analysis, it would be premature to determine whether defendant is entitled to fees.

DISPOSITION

The court's order denying the anti-SLAPP motion as to the third, fourth, fifth, eighth, ninth, and tenth causes of action is affirmed. The order also is affirmed with respect to allegations of theft and related misconduct, which in part, support the second,

15

sixth, and seventh causes of action.  The court's order denying the anti-SLAPP motion with respect to the first, second, sixth, and seventh causes of action is otherwise reversed. As to the latter, the matter is remanded to the court for further proceedings consistent with this opinion.  In the interests of justice, each party shall bear her or its own costs on appeal.


                                        SANCHEZ, J.

WE CONCUR:


O'LEARY, P. J.


DELANEY, J.