Filed 4/23/21  Lillie v. Cal. Institute of Technology CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DAVID LILLIE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CALIFORNIA INSTITUTE OF TECHNOLOGY,<br><br>    Defendant and Respondent. | B302941<br><br>(Los Angeles County<br>Super. Ct. No. 19BBCV00346) |

APPEAL from an order and a judgment of the Superior Court of Los Angeles County, John J. Kralik, Judge.  Reversed.

Law Office of Jan T. Aune and Jan T. Aune for Plaintiff and Appellant.

DLA Piper, Holly R. Lake and Ryan Matthew Estes for Defendant and Respondent.

_____

Defendant and respondent California Institute of Technology (Caltech) manages the Jet Propulsion Laboratory (JPL) pursuant to a contract with the National Aeronautics and Space Administration (NASA). In 2014, plaintiff and appellant David Lillie (Lillie), who at that time was an employee of ManTech International Corporation (ManTech), worked at JPL in accordance with a contractual arrangement between Caltech and ManTech. Lillie claims that Caltech personnel provided him with access to a third-party government contractor's proprietary data to facilitate his completion of assigned tasks. According to Lillie, he later discovered that he lacked authorization to access this data and that Caltech personnel had attempted to conceal Lillie's use of the data.

Lillie claims to have reported these events to Caltech's Ethics Department, and that he later relayed them to Congresswoman Judy Chu's office. ManTech subsequently terminated Lillie's employment. Next, at a meeting arranged by Congresswoman Chu's office, Lillie alleges he returned to Caltech the only copy of the third-party proprietary data that he had in his possession. Nonetheless, shortly after he returned the data, Caltech personnel apparently told ManTech employees (among other things) that Lillie retained this data in violation of his nondisclosure agreement. Lillie maintains that ManTech thereafter changed his rehire eligibility status from eligible to ineligible in part because of Caltech's statements.

Lillie sued Caltech for defamation, negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, intentional misrepresentation, and negligent misrepresentation. Caltech responded by filing a special motion to strike Lillie's operative first amended complaint under Code of

Civil Procedure section 425.16,[1] the Strategic Lawsuit Against Public Participation (anti-SLAPP) statute. The trial court granted the motion and struck the entirety of Lillie's operative pleading. Lillie appeals that decision.

On de novo review of the trial court's ruling, we conclude that Caltech has failed to satisfy its burden of showing that Lillie's claims arose from conduct protected by the anti-SLAPP statute. Specifically, Caltech does not show that it made the statements that are the subject of Lillie's claims in connection with an issue under review or consideration by a legislative body or any other official proceeding authorized by law (§ 425.16, subd. (e)(2)), or that Caltech engaged in "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest" (*id.*, subd. (e)(4)). Accordingly, we reverse without addressing whether Lillie established a probability of prevailing on his claims.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

We summarize only those facts relevant to this appeal.

---

[1] Undesignated statutory citations are to the Code of Civil Procedure.

[2] We base much of this part on the operative first amended complaint and undisputed portions of the parties' briefing and the trial court's decision. (See § 425.16, subd. (b)(2) [providing that "the court shall consider the pleadings[ ] and supporting and opposing affidavits stating the facts upon which the liability or defense is based" when ruling on an anti-SLAPP motion]; *Artal v. Allen* (2003) 111 Cal.App.4th 273, 275, fn. 2 [" '[B]riefs and argument . . . are reliable indications of a party's position on the facts as well as the law, and a reviewing court may make use of

Caltech is a research university in Southern California. JPL is a federally-funded research and development center, which is managed by Caltech pursuant to a contract with NASA. In 2014, Caltech and ManTech had a contractual arrangement whereby ManTech provided Caltech with engineering analysis and software reliability support services.

In July 2014, Lillie was a ManTech employee who ManTech assigned to JPL pursuant to ManTech's contract with Caltech. Lillie avers that in September 2014, Caltech personnel provided him with access to a third-party government contractor's[3] "MathCAD files" in order to assist him in completing his assigned tasks. Lillie alleges that he created a CD-ROM copy of the MathCAD files so he could work at home, and that he later prepared a technical report that he forwarded to a Caltech employee. According to Lillie, this Caltech employee later asked Lillie to delete the references to the MathCAD files from the technical report, but Lillie refused to do so.

---

statements therein as admissions against the party. [Citations.]' "]; *Baxter v. State Teachers' Retirement System* (2017) 18 Cal.App.5th 340, 349, fn. 2 [utilizing the summary of facts provided in the trial court's ruling].) Of particular note, Caltech asserts that actions Lillie claims JPL personnel took are actually attributable to Caltech's employees, including the allegedly defamatory statements of which Lillie complains. We proceed on this assumption as well because Lillie does not dispute it in his reply. (See *Rudick v. State Bd. of Optometry* (2019) 41 Cal.App.5th 77, 89–90 [concluding that the appellants made an implicit concession by "failing to respond in their reply brief to the [respondent's] argument on th[at] point"].)

[3] Lillie claims that this third-party government contractor is Lockheed Martin.

On October 7, 2014, Lillie reported to Caltech's Ethics Department that the aforesaid Caltech employee was covering up that Lillie had used the MathCAD files. Lillie contends that it was inappropriate for the Caltech employee to tell him not to report that he had used the MathCAD files where the third-party government contractor to whom the files belonged (Lockheed Martin) did not permit him to access them.

Later in October 2014, ManTech placed Lillie on furlough. Although Lillie returned to work full-time in November 2014, ManTech placed him on furlough again in December 2014.

Also in December 2014, Lillie informed Congresswoman Judy Chu's office of his complaint to Caltech's Ethics Department. Caltech avers that "[o]n January 7, 2015, Congresswoman Judy Chu's office advised Caltech that Lillie contacted the office and expressed concern about proprietary information which he accessed while he was working for ManTech on a project for Caltech."

ManTech terminated Lillie's employment on February 6, 2015.

On April 13, 2015, at a meeting arranged by Congresswoman Chu's office, Lillie returned a CD-ROM containing the MathCAD files to Caltech's Ethics Department.

Lillie avers that Caltech thereafter made five defamatory statements to ManTech concerning Lillie, each of which is summarized below.

First, on April 13, 2015, after Lillie returned the CD-ROM containing the MathCAD files, a Caltech subcontracts manager stated the following in an e-mail to a ManTech employee: Caltech had "been made aware by David Lillie that he is in

5

possession of third party and ITAR controlled data[4] which he took from JPL."

Second, in the next sentence of this April 13, 2015 e-mail, the Caltech subcontracts manager further stated: "This action is in violation of the terms of JPL subcontract number 1384568 and the non-disclosure agreement (NDA) signed by Mr. Lillie."

Third, later that day, the ManTech employee who received the April 13, 2015 e-mail forwarded this correspondence to another Caltech employee and stated, "I'm assuming that you are aware of this situation," and, on April 14, 2015, this second Caltech employee responded in pertinent part: "Lillie is playing really dirty."

Fourth, on April 15, 2015, the Caltech subcontracts manager sent another e-mail to the ManTech employee who received the April 13, 2015 e-mail, wherein the subcontracts manager stated: (1) Caltech's Ethics and Human Resources Departments had requested that the subcontracts manager send that April 13, 2015 e-mail to ManTech, and (2) the subcontracts manager did "not have much insight on the issue other than what is in the email [she had sent on April 13, 2015] and the fact that David Lillie is disgruntled."

---

4 Neither party defines the term "ITAR controlled data." The Department of State's regulations define "ITAR" as "International Traffic in Arms Regulations," which govern the "exports of defense articles and defense services . . . ." (See Amendment to the International Traffic in Arms Regulations: Changes to Authorized Officials and the UK Defense Trade Treaty Exemption, 79 Fed.Reg. 8082, 8084 (Feb. 11, 2014).) We take judicial notice of this regulation. (Evid. Code §§ 452, subds. (b)–(c), 459.)

Finally, on April 16, 2015, the ManTech employee who received the foregoing e-mails from Caltech personnel sent an e-mail to a ManTech contracts manager concerning a telephone conference these two ManTech employees had with the Caltech subcontracts manager. The e-mail stated: (1) Lillie "has copies" of "3rd party proprietary" and "ITAR sensitive data" on "his own personal computer"; (2) Lillie "appears to be a disgruntled employee"; and (3) Lillie "thought the CD would substantiate his claims about inappropriate behavior by ManTech" but "[h]e has been discredited by his own actions." The e-mail did not explicitly clarify whether, and if so, to what extent, Caltech's subcontracts manager supplied this information to the two ManTech employees during the telephone conference.

Lillie claims that in 2018, he discovered Caltech's allegedly defamatory statements in connection with a federal False Claims Act lawsuit he filed against ManTech. Lillie further maintains that in September 2018, he learned in the federal action that on or about April 23, 2015, ManTech had changed his rehire eligibility from eligible to ineligible in part because of Caltech's April 2015 statements.

On April 24, 2019, Lillie commenced the instant action against Caltech. On August 5, 2019, Lillie filed the operative first amended complaint against Caltech, alleging the following six causes of action: (1) defamation, (2) negligence, (3) intentional infliction of emotional distress, (4) negligent infliction of emotional distress, (5) negligent misrepresentation, and (6) intentional misrepresentation.

On August 16, 2019, Caltech moved to strike the entirety of the first amended complaint under the anti-SLAPP statute, asserting that Lillie's claims arise from activity protected under

7

section 425.16, subdivisions (e)(2) and (e)(3), and that he could not establish a probability of prevailing on his claims. Lillie opposed the motion on October 28, 2019, and Caltech filed its reply on November 1, 2019.

On November 8, 2019, the trial court heard Caltech's motion and issued a written ruling granting it. The court agreed with Caltech that Lillie's claims fall within the scope of section 425.16, subdivision (e)(2), given that "the alleged statements made between Caltech and ManTech regarding [Lillie] were made in connection with an internal investigation that took place as a result of Congresswoman Chu's request." Conversely, the court found that section 425.16, subdivision (e)(3) was inapplicable because Caltech did not make its statements in a place open to the public or a public forum, and they were not made in connection with an issue of public interest.

Because the trial court found Caltech had established that Lillie's claims arose from activity protected by the anti-SLAPP statute, it assessed whether he had demonstrated a probability of prevailing on his claims. The lower court struck Lillie's defamation cause of action on the following grounds: Lillie had failed to establish the falsity of Caltech's assertion that Lillie violated a nondisclosure agreement; Caltech's claims that he was disgruntled were nonactionable opinions; and all of the allegedly defamatory statements were privileged under Civil Code section 47, subdivision (c) because Caltech made them in the context of its "company-contractor relationship" with ManTech and Lillie did not show that Caltech acted with malice.[5]

---

[5] Civil Code section 47, subdivision (c) provides in pertinent part: "A privileged publication or broadcast is one made: [¶] . . . [¶] (c) In a communication, without malice, to a

8

Next, the trial court found Lillie's negligence cause of action failed because Lillie did not demonstrate that Caltech owed him a duty of care and Caltech's statements to ManTech were privileged under Civil Code section 47, subdivision (c). The court also struck Lillie's cause of action for negligent infliction of emotional distress because it was a species of negligence (a cause of action the lower court had already rejected), and Lillie did not clarify whether he brought a claim under a bystander or direct victim theory.

Further, the trial court struck Lillie's intentional infliction of emotional distress claim because he did not show he suffered severe emotional distress, Caltech's statements were privileged, and Caltech did not make them with the intent of causing Lillie emotional distress. Lastly, the court concluded that Lillie's intentional and negligent misrepresentation causes of action failed because he did not show that Caltech intended to defraud ManTech and Caltech's statements were privileged under Civil Code section 47, subdivision (c).

On November 25, 2019, the trial court entered judgment in favor of Caltech, which stated that Caltech was entitled to recover its fees and costs pursuant to section 425.16, subdivision (c).

---

person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information." (Civ. Code, § 47, subd. (c).)

9

On December 10, 2019, Lillie filed a notice of appeal.[6]

## DISCUSSION

The anti-SLAPP statute provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

For the purposes of the anti-SLAPP statute, the phrase " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative,

---

[6] Although Lillie's notice of appeal is somewhat unclear as to whether he intended to appeal the judgment (and not simply the order granting the anti-SLAPP motion), the parties treat the notice as if it encompasses both the trial court's ruling and the resulting judgment. Under these circumstances, we deem the notice of appeal to cover the order and the judgment. (See *K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 882 [" ' "[N]otices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced." ' [Citations.]".)

executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (See § 425.16, subd. (e).)

Resolution of an anti-SLAPP motion involves a two-step procedure. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).) "First, the defendant must establish that the challenged claim arises from activity protected by section 425.16." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).) "To determine whether a claim arises from protected activity, courts must 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' [Citation.] Courts then must evaluate whether the defendant has shown any of these actions fall within one or more of the four categories of ' "act[s]" ' protected by the anti-SLAPP statute. [Citations.]" (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884 (*Wilson*).)

If the defendant discharges that obligation, then "the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." (*Baral*, *supra*, 1 Cal.5th at p. 396.) On the other hand, the court should deny the motion without addressing that second step if the defendant fails to demonstrate that the claim arises from protected activity. (*Symmonds v. Mahoney* (2019) 31 Cal.App.5th 1096, 1103–1104.)

11

"We review de novo the grant or denial of an anti-SLAPP motion. [Citation.]  We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity. [Citations.]  In addition to the pleadings, we may consider affidavits concerning the facts upon which liability is based." (*Park*, *supra*, 2 Cal.5th at p. 1067.)

In this case, the parties do not dispute that Lillie's claims arise from the April 2015 e-mail and telephonic conversations between Caltech and ManTech described in our Factual and Procedural Background, *ante*.  Caltech contends this conduct is protected activity under section 425.16, subdivisions (e)(2) and (e)(4).[7]  For the reasons discussed below, we conclude that Caltech has failed to demonstrate that its conduct falls within the scope of either provision.  We thus reverse the trial court's ruling and the judgment entered thereafter without addressing the merits of Lillie's claims.

## A.   Caltech Fails to Establish that Section 425.16, Subdivision (e)(2) Applies

"[A]ny written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official

---

[7] Although Caltech's memorandum in support of its motion did not specify whether it was relying on section 425.16, subdivision (e)(3) or (e)(4), Caltech's reply brief clarified that it sought the protection of subdivision (e)(3), and the trial court rejected Caltech's attempt to invoke that provision.  On appeal, Caltech abandons its argument that section 425.16, subdivision (e)(3) applies, and instead claims that its conduct is protected by subdivision (e)(4).

proceeding authorized by law" is protected by the anti-SLAPP statute. (See § 425.16, subd. (e)(2).) During the proceedings below, the trial court agreed with Caltech that "the alleged statements were made in connection with an issue under consideration by an official proceeding authorized by law" because they "were made in connection with an internal investigation that took place as a result of Congresswoman Chu's request."

Caltech reasserts this contention on appeal, claiming that its "discussions" with ManTech, "in the course of an internal investigation for NASA's JPL, conducted at the behest of a Congresswoman, fall within" section 425.16, subdivision (e)(2) and cites case authority purportedly supporting that an internal investigation can be "an official proceeding authorized by law."[8]

---

[8] Caltech contends that Lillie waived any challenge to the application of section 425.16, subdivision (e)(2) to the instant case by failing to raise it in his appellate briefing. We exercise our discretion to excuse any such waiver. We may reach an issue omitted from an appellant's briefing if the respondent "cannot reasonably claim prejudice from [the panel's] consideration of" that issue. (See *Nelsen v. Legacy Partners Residential, Inc.* (2012) 207 Cal.App.4th 1115, 1122.) Caltech was in no way prejudiced by Lillie's failure to address the potential applicability of subdivision (e)(2) because Caltech anticipated this issue and discussed it on the merits in the respondent's brief.

In addition, the policies underlying the anti-SLAPP statute weigh in favor of excusing any waiver. Specifically, " '[t]he Legislature . . . has provided, and California courts have recognized, substantive and procedural limitations that protect plaintiffs against overbroad application of the anti-SLAPP mechanism' " that could otherwise "chill the exercise of protected petitioning activity . . . ." (See *Equilon Enterprises v. Consumer*

13

As a preliminary matter, we observe that Caltech does not purport to be a governmental entity whose investigations fit within the confines of section 425.16, subdivision (e)(2). Although Caltech represents that "*JPL* is a federally-funded research and development center under NASA," Caltech claims to be "a globally recognized doctorate-granting research university in Southern California" that "manages JPL pursuant to a contract with NASA." (Italics added.)

We further observe that Caltech does not argue the federal government had delegated its oversight functions vis-à-vis JPL to Caltech such that Caltech's internal investigation constituted an "executive" or "other official proceeding authorized by law" for the purposes of section 425.16, subdivision (e)(2), nor did Caltech raise any such argument below. The only evidence Caltech presented regarding whether its investigation was an "official proceeding authorized by law" was a declaration from one of its ethics advisors, wherein she claimed that Caltech "opened and conducted a thorough and robust investigation" after Congresswoman Chu's office contacted Caltech. She did not attest that Caltech undertook this investigation pursuant to a delegation of authority from NASA or any other federal agency. We decline to address an issue not raised below or on appeal, and in the absence of any citation to authority or a sufficient record.

Further, the trial court characterized Caltech's affiliation with ManTech as "a company-contractor relationship that is both contractual and business in nature." This description, which

---

*Cause, Inc.* (2002) 29 Cal.4th 53, 65.) One of those limitations is the requirement that the defendant show that "the subject cause of action is in fact one 'arising from' the defendant's protected speech or petitioning activity. [Citation.]" (See *id.* at p. 66.)

14

Caltech does not dispute, further suggests that Caltech is not a governmental entity and that it functions as a private enterprise. Additionally, the California Secretary of State's website indicates that Caltech filed amended and restated articles of incorporation in 2017, which show that Caltech is a California nonprofit public benefit corporation governed by Corporations Code section 5000 et seq.[9] (See California Institute of Technology, Amended & Restated Articles of Incorporation, at https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=000 20720-22116005 (as of Apr.6, 2021), archived at <https://perma.cc/2XHN-HNQX>.) By filing this document, Caltech has represented that it is not a governmental entity. (Cf. *Hagman v. Meher Mount Corp.* (2013) 215 Cal.App.4th 82, 85, 87–89 ["We hold that a nonprofit religious organization's status as a 'public benefit corporation' does not make it a 'public entity' immune from adverse possession under Civil Code section 1007."].)

Although it is possible that statements made in the course of an investigation undertaken by a nongovernmental entity may fall within the scope of section 425.16, subdivision (e)(2), any such investigation must be *authorized by law* in order to trigger anti-SLAPP protection. For instance, in *Kettler v. Gould* (2018) 22 Cal.App.5th 593, Division 8 of our District rejected a movant's

---

[9] On our own motion, we take judicial notice of the amended and restated articles of incorporation from the California Secretary of State's website. (See *Jones v. Goodman* (2020) 57 Cal.App.5th 521, 528, fn. 6 [noting that an appellate court may, on its own motion, "take judicial notice of articles of incorporation" filed with the California Secretary of State that are available on the secretary's website].)

15

argument that an investigation conducted by Certified Financial Planner Board of Standards, Inc. (CFP), "a privately organized group that promotes competent and ethical services in the financial planning industry," amounted to an official proceeding authorized by law. (See *Kettler*, at pp. 597, 602–604.)

In so doing, the *Kettler* court distinguished that case from a Supreme Court decision holding that " 'a hospital's peer review qualifies as "any other official proceeding authorized by law" ' under subparagraph (2) of subdivision (e)" " 'because that procedure is required under Business and Professions Code section 805 et seq., governing hospital peer review proceedings' " and " '[a] hospital's decisions resulting from peer review proceedings are subject to judicial review by administrative mandate.' " (See *Kettler*, *supra*, 22 Cal.App.5th at pp. 603–604, quoting and citing *Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192, 198–203 (*Kibler*).) Conversely, the CFP's investigation possessed neither of those characteristics.[10]

In the instant case, Caltech does not identify any statute, regulation, rule, or other legal authority that authorized its "internal investigation" or subjected its findings to judicial review by administrative mandate. Caltech also does not explain why

---

[10] As our colleagues in Division 8 observed, "The CFP Board is not a government entity; it is not related in any way to a government entity; its procedures are not required by law; and its decisions are not subject to judicial review by administrative mandate. Accordingly, cross-defendants' complaint to the CFP Board is not protected activity, because it is not a statement made before, or made in connection with an issue under consideration or review by, an 'official proceeding authorized by law.' (§ 425.16, subd. (e)(1) & (2).)" (*Kettler*, *supra*, 22 Cal.App.5th at p. 604.)

16

Congresswoman Chu's office's encouragement to conduct the investigation or the fact that "Caltech manages JPL pursuant to a contract with NASA" establishes that it engaged in activity protected under section 425.16, subdivision (e)(2). Further, Caltech did not remedy any of these deficiencies in its briefing during the proceedings below. Thus, Caltech has not discharged its obligation to show that it made statements to ManTech in connection with an "official proceeding authorized by law." (See § 425.16, subd. (e)(2); cf. *Bikkina v. Mahadevan* (2015) 241 Cal.App.4th 70, 90 & fn. 6 (*Bikkina*) [concluding that the defendant failed to show his complaints were "part of an official proceeding authorized by law" for the purposes of Civil Code section 47, subdivision (b) because there was no evidence that the university's internal complaint process was authorized by law or reviewable by mandate].)

Caltech's authorities do not detract from this conclusion. In *Laker v. Board of Trustees of California State University* (2019) 32 Cal.App.5th 745, the Court of Appeal observed that section 425.16, subdivision (e)(2) "applies to proceedings required by statute," and found this subparagraph governed that case because the defendant-university's "investigation was statutorily authorized by section 89030 of the Education Code, which provides that the University may adopt rules or regulations for the government of their employees . . . ." (See *Laker*, at p. 764, citing *Kibler*, *supra*, 39 Cal.4th at p. 197.) As noted above, Caltech has not identified any statute authorizing the investigation at issue here.

*Jeffra v. California State Lottery* (2019) 39 Cal.App.5th 471, is of no assistance to Caltech either. There, a plaintiff filed suit against his former employer, the California State Lottery,

17

alleging that the "defendant engaged in a pretextual investigation, ultimately forcing him to retire . . . ." (See *Jeffra*, at p. 474.) The Court of Appeal held that the defendant's internal investigation constituted an " 'official proceeding authorized by law' " for the purposes of section 425.16, subdivision (e)(2) because it is a "state entity." (See *Jeffra*, at pp. 482–483.) As noted above, Caltech is a nonprofit public benefit corporation, and not a governmental entity.

Lastly, *Green v. Cortez* (1984) 151 Cal.App.3d 1068, does not establish that Caltech's investigation was an official proceeding authorized by law. The *Green* court held that a police investigation initiated at the request of a city councilman constituted a " 'public official proceeding' " covered by the fair and true report privilege. (See *Green*, at pp. 1070–1071, 1073.) *Green* did not hold that an internal investigation conducted by a private entity at the suggestion of an elected official constituted an "official proceeding authorized by law" under the anti-SLAPP statute. (See *ibid.*; § 425.16, subd. (e)(2).)

At oral argument, Caltech contended for the first time that it made the allegedly defamatory statements "in connection with an issue under consideration or review by a legislative . . . body" for the purposes of section 425.16, subdivision (e)(2) simply because Congresswoman Chu's office had encouraged Caltech to conduct an investigation in response to Lillie's complaint to the Congresswoman's office about being able to access proprietary data while working for ManTech on a project for Caltech. At oral argument, Caltech further argued, again for the first time, that it was irrelevant whether that internal investigation was "authorized by law" given that the investigation was initiated by the office of Congresswoman Chu's telephone call. Regardless of

18

whether this argument was timely raised, we would reject it on the merits.

Under our Supreme Court's interpretation of section 425.16, subdivision (e)(2), the provision does not encompass "any issue a legislative body may conceivably decide to take up months or years in the future." (See *Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 627 (*Rand Resources, LLC*).) Rather, "[t]he subdivision . . . appears to contemplate an ongoing—or, at the very least, immediately pending—official proceeding," and "an issue . . . not presently 'under consideration or review' by such authorized bodies" does not qualify. (See *ibid.*)

Here, Caltech has offered no evidence that Congresswoman Chu's office had prompted Caltech to undertake an investigation because Lillie's averments were under consideration or review by Congress or a committee on which the Congresswoman serves. Caltech's ethics advisor merely attests that Congresswoman Chu's office "advised Caltech that Lillie contacted the office and expressed concern about proprietary information which he accessed while he was working for ManTech on a project for Caltech." In the absence of evidence of "an ongoing—or, at the very least, immediately pending" legislative proceeding, we find that Congresswoman Chu's tangential connection to this case does not trigger section 425.16, subdivision (e)(2). (See *Rand Resources, LLC*, *supra*, 6 Cal.5th at p. 627.)

Indeed, under Caltech's reasoning, every citizen complaint that generates a telephone call from the office of the citizen's representative would bring statements made in the ensuing—otherwise private—internal investigation by the recipient of that call within the purview of the anti-SLAPP statute. Caltech cites no authority for this proposition.

19

In sum, Caltech fails to establish that its communications with ManTech were made "in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law" for the purposes of section 425.16, subdivision (e)(2).

**B.    Caltech Fails to Demonstrate that Its Speech Falls Within Section 425.16, Subdivision (e)(4)'s Catchall Provision**

Section 425.16, subdivision (e)(4) provides that protected activity includes:  "[A]ny other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."  (See § 425.16, subd. (e)(4).)

Our high court recently clarified that this "catchall provision . . . calls for a two-part analysis . . . .  First, we ask what 'public issue or . . . issue of public interest' the speech in question implicates—a question we answer by looking to the content of the speech.  (§ 425.16, subd. (e)(4).)  Second, we ask what functional relationship exists between the speech and the public conversation about some matter of public interest." (See *FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 149–150 (*FilmOn.com Inc.*).)  At the second stage of the analysis, "we examine whether a defendant—through public or private speech or conduct—participated in, or furthered, the discourse that makes an issue one of public interest." (*Id.* at p. 151.) *FilmOn.com Inc.* further explained that "the inquiry of whether a statement contributes to the public debate is one a court can hardly undertake without incorporating considerations of context—including audience, speaker, and purpose." (*Id.* at pp. 151–152.)

20

Caltech argues that its statements to ManTech are protected activity under the catchall provision because (1) the underlying "investigation concerned potentially improper access to information used for space exploration missions," (2) "[s]uch improper access has implications to safe space exploration and exposes NASA to threats from entities outside of the United States," (3) Caltech made the complained-of statements to ManTech "to remedy the breach and prevent similar breaches in the future," and (4) "Lillie's accusations . . . were significant and important" because he reported them to Congresswoman Chu's office and the Congresswoman's office asked Caltech to open an investigation relating thereto.

Although we agree that the topic of safe space exploration is an issue of public interest, we conclude that there is no connection between Caltech's statements and any public discourse regarding this topic. (See *FilmOn.com Inc.*, *supra*, 7 Cal.5th at p. 150 ["[V]irtually always, defendants succeed in drawing a line—however tenuous—connecting their speech to an abstract issue of public interest. [Citation.] . . . [¶] . . . [¶] [T]he catchall provision demands 'some degree of closeness' between the challenged statements and the asserted public interest."].)

The facts of *FilmOn.com Inc.* and *Bikkina* are instructive on this point. The defendant in *FilmOn.com Inc.* was a company that monitored websites to ensure that they were appropriate venues for its customers' advertising. (See *FilmOn.com Inc.*, *supra*, 7 Cal.5th at p. 141.) The defendant reported its evaluations of websites to its clients in exchange for a fee and their agreement to keep the reports confidential. (See *ibid.*) As to the plaintiff's websites in *FilmOn.com Inc.*, in its confidential reports, the defendant informed its clients that the websites

21

contained adult content (i.e., material inappropriate for children) and lacked appropriate controls to prevent access to, and/or distribution of, copyrighted material. (See *ibid.*) The plaintiff subsequently sued the defendant for trade libel, tortious interference with contract, tortious interference with prospective economic advantage, and violation of California's unfair competition law. (*Id.* at p. 142.) The defendant filed an anti-SLAPP motion, claiming that its reports were protected under section 425.16, subdivision (e)(4). (See *FilmOn.com Inc.*, at pp. 142, 152.)

In analyzing whether the catchall provision protected the defendant's confidential reports, the Supreme Court observed that "the various actions of [the plaintiff's] CEO [who injected himself into the public spotlight to discuss the legality of his corporation's services], or the issue of children's exposure to sexually explicit media content—in the abstract—seem to qualify as issues of public interest under section 425.16, subdivision (e)(4)." (See *FilmOn.com Inc.*, *supra*, 7 Cal.5th at pp. 152.)

The high court then "address[ed] the specific nature of [the] defendant's speech and its relationship to the matters of public interest," and concluded that the defendant's reports did not "further[ ] the public conversation on an issue of public interest." (See *FilmOn.com Inc.*, *supra*, 7 Cal.5th at pp. 152–153.) *FilmOn.com Inc.* reasoned that: The defendant "issue[d] its reports not to the wider public—who may well be interested in whether [the plaintiff] hosts content unsuitable for children or whether its streaming platform infringes copyright—but privately, to a coterie of paying clients"; "[t]hose clients, in turn, use[d] the information [the defendant] provide[d] for their

22

business purposes alone"; and "[t]he information never entered the public sphere, and the parties never intended it to." (See *id.* at p. 153.)

*Bikkina* also found that a defendant's speech was not protected by section 425.16, subdivision (e)(4). (See *Bikkina*, *supra*, 241 Cal.App.4th at pp. 75, 81.) There, the defendant-professor filed complaints with a university claiming that the plaintiff had falsified data concerning carbon sequestration and had plagiarized the defendant's research relating to that topic. (See *id.* at pp. 75–78, 82–83.) After the plaintiff graduated from the university and began his employment at a laboratory, the defendant told the co-authors of one of the plaintiff's research papers that the defendant had authorship rights thereto, and the defendant also repeated his allegations of falsification of data and plagiarism to employees of the laboratory. (See *id.* at pp. 76–79, 82.) The plaintiff thereafter sued the defendant for libel per se, slander per se, negligence, and intentional infliction of emotional distress. (*Id.* at p. 76.) The defendant filed an anti-SLAPP motion against all the plaintiff's claims. (See *id.* at pp. 76–77.)

At prong one of the analysis, the Court of Appeal rejected the defendant's argument that section 425.16, subdivision (e)(4) applied because his criticism of the plaintiff's data concerned climate change and greenhouse gases. (See *Bikkina*, *supra*, 241 Cal.App.4th at pp. 82–85.) Specifically, the *Bikkina* court concluded that the defendant's speech was "not part of a public debate on a broader issue of public interest" but instead amounted to "a private campaign to discredit another scientist" from the university. (See *id.* at p. 83.) The court reasoned that the defendant made the allegedly defamatory statements to "a small, specific audience: [u]niversity faculty and [the

23

laboratory's] scientists"; these statements were "specific complaints about contaminated quartz samples and plagiarism in two papers that were not distributed to a broad audience"; and the mere fact that "carbon sequestration is related to climate change . . . does not convert [the defendant's] technical objections into a topic of public interest."[11]  (See *Bikkina*, at pp. 82–85.)

Similarly, Caltech's statements did not contribute to the public debate on safe space exploration.  Just as the defendants in *FilmOn.com Inc.* and *Bikkina* communicated their allegedly

---

[11] *FilmOn.com Inc.* criticized that portion of the *Bikkina* decision suggesting courts should attempt to "discern[ ] a single topic of speech" that a particular statement is really " 'about' " (e.g., "a narrow, largely private dispute" and not "the asserted issue of public interest").  (See *FilmOn.com Inc.*, *supra*, 7 Cal.5th at p. 149, citing *Bikkina*, *supra*, 241 Cal.App.4th at p. 85.) *FilmOn.com Inc.* remarked that this methodology "is less than satisfying; if the social media era has taught us anything, it is that speech is rarely 'about' any single issue."  (See *FilmOn.com Inc.*, at p. 149.)  *FilmOn.com Inc.* did not, however, disapprove of other aspects of *Bikkina*.  In fact, *Bikkina*'s analysis of the context of the speech at issue in that case is consistent with *FilmOn.com Inc.*'s approach.  (See *Bikkina*, *supra*, 241 Cal.App.4th at p. 84 [" '[I]t is not enough that the statement refer to a subject of widespread public interest; the statement must in some manner itself contribute to the public debate. . . . ' [Citations.]"]; accord, *FilmOn.com Inc.*, *supra*, 7 Cal.5th at p. 154 ["[A] court must consider whether a statement—including the identity of its speaker, for example, or the audience sought— contributes to or furthers the public conversation on an issue of public interest.  It is by carefully observing this wedding of content and context that we can discern if conduct is 'in furtherance of' free speech 'in connection with' a public issue or issue of public interest.  (§ 425.16, subd. (e)(4))."].)

defamatory statements to relatively small audiences (see *FilmOn.com Inc.*, *supra*, 7 Cal.5th at p. 153; *Bikkina*, *supra*, 241 Cal.App.4th at pp. 82–83), two of Caltech's employees made the statements in question to only two employees of one of Caltech's contractors.  The fact that these conversations took place in the context of a private business relationship strongly suggests there is no "functional relationship . . . between the speech and the public conversation about some matter of public interest."  (See *FilmOn.com Inc.*, at pp. 149–150; *id.* at p. 153 [holding that the fact that the defendant "issues its reports not to the wider public . . . but privately, to a coterie of paying clients" weighed against applying the catchall provision].)  Thus, the identities of the speaker and the audience, respectively, suggest that subdivision (e)(4) is unavailable to Caltech.

Moreover, it seems the only connection between the topic of safe space exploration and Caltech's statements is that Caltech uttered them to cause ManTech to take action to prevent future breaches (e.g., by refusing to rehire Lillie), thereby safeguarding Caltech's operations at JPL.[12]  In this respect, Caltech's conduct is akin to the "private campaign to discredit" the plaintiff in *Bikkina*, which did not amount to conduct in furtherance of the exercise of the right of free speech in connection with a public

---

[12]  Indeed, during the proceedings below, one of Caltech's ethics advisors asserted the following in a declaration:  "Caltech discussed with ManTech the status of Lillie's potential possession of proprietary documents in order to close the internal investigation, allow ManTech to follow their protocol for addressing such matters, understand how this occurred and [*sic*] *in order to prevent this situation from occurring again.*"  (Italics added.)

25

issue or an issue of public interest for the purposes of section 425.16, subdivision (e)(4). (See *Bikkina*, *supra*, 241 Cal.App.4th at p. 83.) Although Caltech's conduct could arguably advance the public's interest in safe space exploration by preventing future breaches of data protocols, a "conceivabl[e] . . . indirect consequence[ ] for an issue of public concern' " is insufficient to trigger subdivision (e)(4). (See *Wilson*, *supra*, 7 Cal.5th at p. 903.) Rather, Caltech must have "participated in, or furthered, *the discourse*" on safe space exploration (see *FilmOn.com Inc.*, *supra*, 7 Cal.5th at p. 151, italics added). Telling ManTech that Lillie improperly retained certain data in violation of a nondisclosure agreement is not part of the public discourse about safe space exploration. There also was no showing that Caltech intended its communications with ManTech to further the public discourse on safe space exploration. (See *FilmOn.com Inc.*, at pp. 151–152 ["[T]he inquiry of whether a statement contributes to the public debate is one a court can hardly undertake without incorporating considerations of context—including audience, speaker, and purpose."].)

In sum, although Caltech's statements tangentially relate to a matter of public interest, Caltech has not shown that they "contribute[d] to the public debate" thereon. (See *FilmOn.com Inc.*, *supra*, 7 Cal.5th at p. 150.) Accordingly, we hold that section 425.16, subdivision (e)(4)'s catchall provision does not apply to this case.

26

## DISPOSITION

The trial court's order granting California Institute of Technology's special motion to strike and the judgment entered thereafter are reversed. David Lillie is awarded his costs on appeal.

NOT TO BE PUBLISHED.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

FEDERMAN, J.*

---

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.