Filed 8/23/22; Certified for Publication 9/14/22 (order attached)
On remand

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| ARAM BONNI,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>ST. JOSEPH HEALTH SYSTEM et al.,<br><br>    Defendants and Respondents. | G052367<br><br>(Super. Ct. No. 30-2014-00758655)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Andrew P. Banks, Judge.  Reversed and remanded as directed.

Greene, Broillet &Wheeler, Mark T. Quigley, Scott H. Carr, Christian T.F. Nickerson; Esner, Change & Boyer, Stuart B. Esner and Joseph Persoff for Plaintiff and Appellant.

ArentFox Schiff, Lowell Brown, Debra J. Albin-Riley and Diane Roldan for Defendants and Respondents.

\*        \*        \*

Plaintiff Aram Bonni is a surgeon. He sued his employers, defendants Mission Hospital Regional Medical Center and St. Joseph Hospital of Orange, as well several other related entities and physicians (collectively, the Hospitals) for retaliation under Health and Safety Code section 1278.5. Bonni alleged he made whistleblower complaints, which caused the Hospitals to retaliate against him by, among other things, suspending his medical staff privileges and initiating peer review proceedings to evaluate his privileges.

In response, the Hospitals filed an anti-SLAPP motion under Code of Civil Procedure section 425.16.[1] They argued Bonni's retaliation cause of action arose from the peer review proceedings, which were protected activity, and that his claims had no merit. The trial court agreed and granted the motion in its entirety. Bonni appealed. This court reversed, finding Bonni's retaliation claim did not arise from protected activity. Our Supreme Court then granted review. It determined Bonni's retaliation cause of action was composed of 19 distinct retaliation claims. Of these claims, it found eight arose from protected activity while the remainder did not. It remanded the matter back to this court to determine whether Bonni has shown a probability of prevailing on these eight claims.

On remand, we conclude Bonni has not met the requisite burden because the eight claims at issue are all precluded by the litigation privilege. Based on this finding and our Supreme Court's ruling, we reverse the trial court's order granting the Hospitals' anti-SLAPP motion in its entirety. We direct the court on remand to enter an order granting the motion as to the eight claims at issue and denying it as to the remaining retaliation claims.

---

[1] "SLAPP" is short for "strategic lawsuit against public participation." (*Equilon Enterprises v. Consumer Cause Inc.* (2002) 29 Cal.4th 53, 57.) All further undesignated statutory references are to the Code of Civil Procedure.

I

FACTS AND PROCEDURAL HISTORY

A. *Factual Background*

We start with our Supreme Court's recitation of the facts set forth in *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995 (*Bonni*).

"Aram Bonni, M.D., is a surgeon specializing in obstetrics and gynecology who began practicing in 1998. He received staff privileges at defendant Mission Hospital Regional Medical Center (Mission) in 2002 and at an affiliated hospital, defendant St. Joseph Hospital of Orange (St. Joseph), in 2010. Bonni would face peer review proceedings at both hospitals, which would ultimately lead to a settlement with St. Joseph's [(the St. Joseph settlement)] wherein Bonni agreed to resign and to a decision terminating Bonni's staff privileges at Mission.

"The proceedings at St. Joseph's began not long after Bonni received staff privileges in 2010. That same year, Bonni performed a surgery proctored and assisted by the hospital's chief of obstetrics and gynecology, one of the named defendants. Like several of Bonni's surgeries, the surgery involved use of a robotic assistant to supply three-dimensional imaging and cut and cauterize tissue. On this occasion, the robot's camera provided only two-dimensional imaging instead of three, and Bonni complained to the assisting doctor about the malfunction. The surgery resulted in patient complications. Over the next few weeks, Bonni performed two more surgeries in which similar problems occurred. Again the patients suffered complications; again Bonni raised concerns about the performance of the robotic assistant.

"After the third surgery, Bonni was advised that St. Joseph was summarily suspending his staff privileges. The subsequent written notice from St. Joseph's chief of staff — one of the defendants here — asserted that in light of 'serious and avoidable injuries to patients' in the three cases, suspension was necessary to avoid 'imminent danger' to St. Joseph's patients. (See Bus. & Prof. Code, § 809.5, subd. (a).)

"As permitted by the hospital staff bylaws, Bonni sought an informal interview with the hospital's medical executive committee. After the interview, the medical executive committee elected to continue the suspension and recommended termination of Bonni's privileges. Based on the length of the suspension, St. Joseph was required to, and did, report its disciplinary action to the Medical Board of California and the National Practitioner Data Bank. (See Bus. & Prof. Code, § 805, subd. (e); 42 U.S.C. § 11133(a)(1).)

"Bonni challenged the suspension and termination recommendation and requested a formal hearing before a hospital hearing committee composed of members of the hospital staff. After a lengthy series of evidentiary hearings, the hearing committee determined that the medical executive committee had sustained its burden on three of 18 charges against Bonni but had not shown by a preponderance of the evidence that either the summary suspension or the termination recommendation was warranted.

"The medical executive committee requested an administrative appeal, whereupon the parties settled. The committee dropped its appeal, Bonni agreed to resign and release the hospital and its staff from any claims, and the parties agreed on the language to be used in the required further reports to the Medical Board of California and National Practitioner Data Bank concerning the disciplinary measures taken against Bonni. (See Bus. & Prof. Code, § 805, subd. (e); 42 U.S.C. § 11133(a)(1).)

"In the meantime, a similar story was unfolding at Mission. In October 2009, Bonni began to voice concerns about robot-assisted surgeries at Mission. In December, Bonni performed one such surgery. According to Bonni, the robot's camera, tissue-cutting scissors, and cauterizing tool all malfunctioned. The patient experienced complications.

"In the wake of that surgery, Mission initiated review of Bonni's performance over the preceding five years. After an investigation, a peer review committee recommended that Bonni's privileges be suspended pending further training in

4

robotic procedures, and Mission's chief of staff, a defendant here, imposed a summary suspension.

"While the suspension was under review, Bonni provided Mission's medical executive committee previous communications about robotic-surgery issues. Apparently unmoved, the committee voted to continue the suspension until Bonni completed additional training. As with the St. Joseph suspension, the length of the suspension triggered a duty to file reports with the Medical Board of California and the National Practitioner Data Bank.

"At the same time, Bonni's privileges were set to lapse, and he submitted an application for reappointment. (See Cal. Code Regs., tit. 22, § 70701, subd. (a)(7) [physicians must seek reappointment at least once every two years].) Mission's medical executive committee recommended denial of the application.

"Bonni invoked his right to a hearing before Mission's judicial review committee, a panel of five doctors. The judicial review committee considered the reasonableness of Bonni's suspension but did not directly address his reappointment. In support of suspension, Mission's medical executive committee submitted approximately 125 charges arising from 19 cases at Mission and, on the ground that they likewise demonstrated lapses in skill or judgment, the three problematic 2010 surgeries at its affiliated hospital, St. Joseph. After considering extensive testimony, the committee unanimously concluded that the original summary suspension was justified, but by a divided vote concluded continuation of the suspension was no longer warranted. The committee found eight of the 125 charges substantiated. The eight sustained charges related principally to documentation and surgery scheduling issues; according to the final report, 'none resulted in poor patient outcomes related to issues raised in these charges.'

"Both sides appealed to Mission's appellate committee. The appellate committee concluded that the initial suspension was warranted at the time; that whether continuation of the suspension was still warranted was a matter outside the jurisdiction of

5

the judicial review committee and appellate committee [citation]; and, finally, that the denial of Bonni's reappointment application was reasonable.  The appellate committee recommended that Mission's board of trustees find the summary suspension warranted and deny the pending application for reappointment.  The board of trustees adopted the committee's recommendations and denied Bonni renewal of his staff privileges." (*Bonni*, *supra*, 11 Cal.5th at pp. 1004–1007.)

## B.  Procedural History

"Bonni sued St. Joseph, Mission, various affiliated entities, and eight individual doctors involved in the disciplinary process [(defined above as the Hospitals)].  Bonni's first cause of action alleged that the Hospitals unlawfully retaliated against him for raising patient safety concerns by summarily suspending him, reporting his suspensions to the state medical board, subjecting him to lengthy and humiliating peer review proceedings, defaming him, and ultimately terminating his hospital privileges.  (See Health & Saf. Code, § 1278.5; Bus. & Prof. Code, §§ 510, 2056.)  Bonni also alleged that St. Joseph had retaliated against him by fraudulently inducing him to enter into [the St. Joseph settlement] and then breaching that agreement.  Based on the same conduct, Bonni also brought causes of action against St. Joseph for breach of contract and rescission of the [St. Joseph settlement].

"The Hospitals filed an anti-SLAPP motion seeking to strike the retaliation cause of action.  [Citation.]  They argued that this cause of action arose from medical peer review proceedings; that medical peer review proceedings are protected activity . . . [citation]; and thus that Bonni must demonstrate some merit to his claim in order to proceed [citation].  They further argued that Bonni could not establish any merit because the disciplinary actions were taken for nonretaliatory reasons related to Bonni's medical competence and because Bonni had signed a release as part of the [St. Joseph settlement] relinquishing any right to sue St. Joseph and its committees and staff.

6

"The trial court granted the Hospitals' motion. As a threshold matter, the trial court agreed with the Hospitals that '[t]he gravamen of the claim is based on defendants' protected peer review activities,' so the anti-SLAPP statute applied to the retaliation cause of action . . . . The trial court then concluded the cause of action lacked the requisite merit to proceed. It found, as to St. Joseph and related defendants, that Bonni could not show any specific complaints he made about patient care, and as to Mission and related defendants, that Bonni had raised safety concerns, but had failed to overcome Mission's evidence that his performance, not these complaints, was the true reason for any adverse actions." (*Bonni*, *supra*, 11 Cal.5th at pp. 1007-1008, fn. omitted.)

Bonni appealed. A panel of this court reversed on grounds the anti-SLAPP statute did not apply. Specifically, the panel "conclude[d] plaintiff's retaliation claim . . . arose from defendants' alleged acts of retaliation against plaintiff because he complained about the robotic surgery facilities at the hospitals, and *not* from any written or oral statements made during the peer review process or otherwise. . . . Accordingly, defendants' motion to strike [fell] on prong one of the anti-SLAPP test . . . ." (*Bonni v. St. Joseph Health System* (2017) 13 Cal.App.5th 851, 855, affd. in part & revd. in part (2021) 11 Cal.5th 995.)

Our Supreme Court then granted review and reversed the panel's decision. Based on *Baral v. Schnitt* (2016) 1 Cal.5th 376, it found Bonni's retaliation cause of action was based on 19 adverse actions, each of which comprised a distinct retaliation claim for anti-SLAPP purposes. (*Bonni*, *supra*, 11 Cal.5th at pp. 1009-1011, 1015.) The Court then examined each of the 19 claims individually and found the following arose from protected activity: "reporting Dr. Bonni's summary suspension and advocating in peer review proceedings that it be upheld (First Amended Complaint for Damages, ¶ 16, subparas. (3)–(5)); criticizing Dr. Bonni's professional abilities in the course of peer review proceedings (*id.*, ¶ 16, subparas. (11), (16)); and inducing Dr. Bonni to settle his dispute with St. Joseph and then allegedly breaching [the St. Joseph settlement] by filing

7

a nonconforming report with the Medical Board of California (*id.*, ¶ 16, additional. subparas. (1)–(3)).” (*Bonni*, *supra*, 11 Cal.5th at p. 1026.)  The remaining retaliation claims did not arise from protected activity and were not subject to the anti-SLAPP statute.  (*Ibid.*)  The Court directed us on remand “to consider in the first instance whether Bonni has met his second-step burden for [the] discrete claims arising from protected activity.”  (*Id.* at pp. 1026-1027.)

II

DISCUSSION

A.  *Legal Background*

Commonly known as the anti-SLAPP statute, “[t]he Legislature enacted section 425.16 to prevent and deter ‘lawsuits . . . brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.’  [Citation.]  Because these meritless lawsuits seek to deplete ‘the defendant’s energy’ and drain ‘his or her resources’ [citation], the Legislature sought ‘“to prevent SLAPPs by ending them early and without great cost to the SLAPP target”’ [citation]. Section 425.16 therefore establishes a procedure where the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation.” (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 187, 192.)

Anti-SLAPP motions are reviewed through a two-step process.  “First, the court must determine ‘whether the defendant has made a threshold showing that the challenged cause of action’ arises from an act in furtherance of the right of petition or free speech in connection with a public issue.  [Citation.]  Second, the court must ‘determine whether the plaintiff has demonstrated a probability of prevailing on the claim.’  [Citation.]  If the defendant makes a threshold showing that the cause of action arises from an act in furtherance of the right of petition or free speech in connection with a public issue and the plaintiff fails to demonstrate a probability of prevailing, then the

8

court must strike the cause of action (§ 425.16, subd. (b)(1)) and award the defendant 'attorney's fees and costs' [citation]." (*Varian Medical Systems, Inc. v. Delfino*, *supra*, 35 Cal.4th at p. 192.)

As set forth above, all issues relating to the first step of analysis have been resolved. Our Supreme Court has determined which of Bonni's retaliation claims arise from protected activity. The narrow issue before us is whether Bonni has demonstrated a probability of prevailing on these claims. We review this issue de novo. (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788.)

To establish a probability of prevailing on the second step, a "plaintiff 'must demonstrate that the [claim] is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' [Citations.] In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant [citation]; though the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.)

Following our Supreme Court's ruling, eight of Bonni's 19 distinct retaliation claims arise from protected activity and are subject to analysis under the second step of the anti-SLAPP test. Five of these claims are alleged against the Hospitals on grounds they retaliated against Bonni through the following activities:

9

i. "Reporting Plaintiffs summary suspensions to the Medical Board of California and National Practioner [*sic*] Data Bank, as well as other persons/entities."

ii. "Abusing the powers of the peer review process and subjecting Plaintiff to a lengthy and humiliating peer review process for over two years, and by refusing to lift Plaintiffs' summary suspension despite recommendations by several separate boards/committees to do so, challenging the favorable findings of the Judicial Review Committee (JRC) at a hearing which occurred in or around October 2014."

iii. "On December 5, 2014, by having an Appellate Committee recommend to the Board that it reverse the findings of the JRC that had been favorable to Plaintiff."

iv. "Engaging in a campaign of character assassination which caused irreparable damage to Plaintiff's reputation."

v. "Making defamatory statements about Plaintiff."

The three remaining retaliation claims at issue relate to the St. Joseph settlement. Thus, they are only asserted against St. Joseph and certain affiliated groups and entities (the St. Joseph defendants).[2] Bonni alleges St. Joseph defendants engaged in the following retaliatory activities:

vi. "Fraudulently inducing and/or coercing Plaintiff to enter into [the St. Joseph settlement]."

vii. "Exercising undue influence over Plaintiff to force him to enter into [the St. Joseph settlement]."

---

[2] The specific affiliates are identified as "St. Joseph Health System, St. Joseph Hospital of Orange, St. Joseph Hospital of Orange Medical Executive Committee and Medical Staff, St. Joseph Hoag Health, and Covenant Health Network." (Capitalization omitted.)

viii.  "Breaching [the St. Joseph settlement] by failing to use the specific language as agreed upon by the parties in reporting to the Medical Board of California and National Practioner [*sic*] Data Bank."

As instructed by our Supreme Court, we will determine whether Bonni has shown a probability of prevailing on each of these eight claims.

## B.  *The Litigation Privilege*

Before reviewing any of Bonni's evidence, we first address the Hospitals' argument that the eight retaliation claims at issue are barred as a matter of law by the litigation privilege.  We agree.

"'The principal purpose of the Civil Code section 47 litigation privilege "'is to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions.'"'"  (*Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 115-116.)  To fulfill this purpose, "Civil Code section 47, subdivision (b), 'confers an absolute privilege to communications made as part of a "'judicial or quasi-judicial proceeding,'" defined to include any sort of "'truth-seeking'" or other official proceeding.'"  (*Klem v. Access Ins. Co.* (2017) 17 Cal.App.5th 595, 613.)  This includes medical peer review proceedings.  (*Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192, 202-203 (*Kibler*).)

The litigation privilege is not limited to statements made during the proceedings, "'"but may extend to steps taken prior thereto, or afterwards."'  [Citation.] [T]he absolute privilege is 'broadly applied and doubts are resolved in its favor.'"  (*Klem v. Access Ins. Co.*, *supra*, 17 Cal.App.5th at p. 613.)  For purposes of applying the privilege, it is irrelevant whether the communications at issue were "made with malice or the intent to harm.  [Citation.]  Put another way, application of the privilege does not

11

depend on the publisher's 'motives, morals, ethics or intent.'" (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 913.)

There is some overlap between the litigation privilege and the anti-SLAPP statute. They are both "construed broadly, to protect the right of litigants to '"the utmost freedom of access to the courts without [the] fear of being harassed subsequently by derivative tort actions."'" (*Healy v. Tuscany Hills Landscape & Recreation Corp.* (2006) 137 Cal.App.4th 1, 5.) Still, "[t]he scope of the protections afforded to litigation-related communications under the anti-SLAPP statute and that afforded by the litigation privilege [citation] are not identical. The two statutes 'are substantively different statutes that serve quite different purposes. . . .'" (*Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1479.) Though our Supreme Court's has determined the eight claims at issue are protected speech under anti-SLAPP statute, we must independently analyze whether they are barred by the litigation privilege.

*1. Reports*

We start with Bonni's claim that the Hospitals retaliated against him by reporting his summary suspensions to the Medical Board of California and the National Practitioner Data Bank (claim i). To be clear, this claim is based on the reports themselves, not on Bonni's suspension or termination. Bonni alleges separate retaliation claims based on these latter acts, which are not subject to the anti-SLAPP statute. (*Bonni*, *supra*, 11 Cal.5th at pp. 1022-1023.)

The reports at issue involved "written statements to the state's licensing agency concerning restrictions imposed on Bonni by a peer review body for allegedly providing substandard care." (*Bonni*, *supra*, 11 Cal.5th at pp. 1017-1018.) The Hospitals were legally required to provide them. (*Ibid.*) As other courts have found, such reports are absolutely privileged under Civil Code section 47, even if they were "improperly motivated." (See, e.g., *Joel v. Valley Surgical Center* (1998) 68 Cal.App.4th 360, 372.)

12

Consequently, Bonni cannot allege any tort claims based on these reports. (*Id.* at pp. 371-372; see *Fahlen v. Sutter Central Valley Hospitals* (2014) 58 Cal.4th 655, 686 [characterizing a retaliation claim under Health & Saf. Code, § 1278.5 as a tort].) Allowing such claims to proceed "would substantially defeat the purpose of the privilege and create an unnecessary chilling effect upon physicians and others who are desirous of upholding professional qualifications and protecting the public." (*Long v. Pinto* (1981) 126 Cal.App.3d 946, 950-951.)

In response, Bonni contends this claim is based on the noncommunicative act of making the report rather than the contents of the report. It is true that the litigation privilege generally does not protect noncommunicative acts. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1058.) As such, "a 'threshold issue in determining the applicability' of the privilege is whether the defendant's conduct was communicative or noncommunicative. [Citation.] The distinction between communicative and noncommunicative conduct hinges on the gravamen of the action. [Citations.] That is, the key in determining whether the privilege applies is whether the injury allegedly resulted from an act that was communicative in its essential nature." (*Ibid.*) Such is the case here. The claim at issue alleges the Hospitals retaliated against Bonni by "[r]eporting [Bonni's] summary suspensions to the Medical Board of California and National Practioner [*sic*] Data Bank, as well as other persons/entities." In other words, Bonni's first claim is based on the Hospital's communication of his suspension to the relevant authorities, which is an inherently communicative act. Further, the claim is based on the contents of the communication, specifically, the reporting of Bonni's suspension.

### 2. *Peer review process*

We next turn to Bonni's claims relating to the peer review process (claims ii, iii, iv, and v above). One claim (claim ii) alleges defendants retaliated by subjecting

Bonni "to a lengthy and humiliating peer review process for over two years." Another (claim iii) is based on the recommendation by Mission's appellate committee to its board of trustees that Bonni's summary suspension was warranted and that his pending application for reappointment should be denied. The final two claims (claims iv and v) are based on allegations the Hospitals defamed Bonni and assassinated his character during the peer review process.

The retaliation claims based on defamation and character assassination are clearly barred. As found by our Supreme Court, "[t]he only statements discussed in Bonni's account that would support assertions of defamation or character assassination are statements concerning Bonni's professional competence, made in connection with the peer review consideration of Bonni's standing at the Hospitals." (*Bonni*, *supra*, 11 Cal.5th at pp. 1016-1017.) Statements made in official proceedings are protected by the litigation privilege (*Laker v. Board of Trustees of California State University* (2019) 32 Cal.App.5th 745, 770), as are "communications made to instigate an official investigation and in connection with the investigation once commenced" (*Lemke v. Sutter Roseville Medical Center* (2017) 8 Cal.App.5th 1292, 1299).

Next, we turn to the retaliation claim based on the peer review process itself (claim i), in which Bonni alleges the Hospitals unfairly subjected him to the "peer review process for over two years." To clarify, this claim is not based on Bonni's suspension, termination of privileges, or the procedures afforded during the peer review process. These acts are the focus of separate retaliation claims, which are not subject to the anti-SLAPP statute. (*Bonni*, *supra*, 11 Cal.5th at pp. 1015-1016, fn. 4, 1026.) Rather, this claim rests on "essentially everything any defendant said in the course of the peer review process in support of limiting Bonni's privileges." (*Id.* at pp. 1017-1018.) As discussed directly above, such statements are privileged. (*Lemke v. Sutter Roseville Medical Center*, *supra*, 8 Cal.App.5th at p. 1298; *Laker v. Board of Trustees of California State University*, *supra*, 32 Cal.App.5th at p. 770.)

14

To the extent this claim is based on the Hospitals' initiation of the peer review proceedings itself, it is also precluded by the litigation privilege. There is "no communication that is more clearly protected by the litigation privilege than the filing of a legal action." (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1249.) The same would logically be true for the initiation of a peer review proceeding, which is also covered by Civil Code section 47, subdivision (b). (*Action*, at p. 1241; *Kibler*, *supra*, 39 Cal.4th at pp. 202-203.) Moreover, failing to apply the privilege to this claim "would further discourage participation in peer review by allowing disciplined physicians to file harassing lawsuits against hospitals and their peer review committee members rather than seeking judicial review of the committee's decision by the available means of a petition for administrative mandate." (*Id.* at p. 201.)

We are also unpersuaded by Bonni's citation to *Smith v. Adventist Health System/West* (2010) 190 Cal.App.4th 40. In *Smith*, the court found a claim based on the suspension of hospital privileges was not barred by the litigation privilege because it arose from noncommunicative activity. (*Id*. at pp. 60-61.) As discussed, however, the claim at issue does not arise from Bonni's suspension. Rather, it arises from statements made during the peer review process or the initiation of the peer review process itself.

Finally, we address Bonni's claim based on the recommendations by Mission's appellate committee to its board of trustees (claim iii). We are not aware of any case that has addressed a substantially similar issue. So, we analyze this claim under the general test, which states the privilege covers ""any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action."" (*Klem v. Access Ins. Co.*, *supra*, 17 Cal.App.5th at p. 613.) All these elements are met. The recommendation is a communication. It is a written report from Mission's appellate committee to its board of trustees, recommending (1) the board find Bonni's summary suspension was warranted and (2) it deny his

15

pending reappointment application. Further, the report was made as part of Bonni's peer review proceeding by participants to determine his qualifications for medical staff privileges. (See *Bonni*, *supra*, 11 Cal.5th at p. 1004 ["hospitals must use a process of professional peer review to evaluate physicians' qualifications for medical staff privileges"].)

### 3. *Negotiations for the St. Joseph settlement*

Bonni asserts two claims based on the St. Joseph settlement negotiations. Specifically, he alleges the St. Joseph defendants retaliated against him by fraudulently inducing or unduly influencing him into entering the St. Joseph settlement (claims vi and vii above). "Numerous courts have held that statements relating to settlements also fall within the [litigation] privilege, including those made during settlement negotiations." (*Navarro v. IHOP Properties, Inc.* (2005) 134 Cal.App.4th 834, 843-844; *Joseph A. Saunders, P.C. v. Weissburg & Aronson* (1999) 74 Cal.App.4th 869, 874-875 [Statements "made in the course of settlement negotiations" are "absolutely privileged pursuant to Civil Code section 47, subdivision (b)"].) The privilege applies even if such statements are fraudulent. (*Herterich v. Peltner* (2018) 20 Cal.App.5th 1132, 1141.)

Bonni contends the litigation privilege is inapplicable because it "does not apply to an equitable action to set aside a settlement agreement for extrinsic fraud." (Quoting *Home Ins. Co. v. Zurich Ins. Co.* (2002) 96 Cal.App.4th 17, 26.) But the claims at issue are retaliation claims, not equitable actions to set aside the St. Joseph settlement.[3] "[W]here a judgment has been '"procured by extrinsic fraud, the normal remedy is to seek equitable relief from the judgment, not to sue in tort,"' given that a tort remedy is precluded by the litigation privilege." (*Weeden v. Hoffman* (2021) 70 Cal.App.5th 269, 290.)

_____

[3] Bonni asserts a separate cause of action to rescind the St. Joseph settlement, which is not at issue here.

16

For example, in *Kuehn v. Kuehn* (2000) 85 Cal.App.4th 824, 828-829, the plaintiff filed an action against her former husband on grounds he had misrepresented and concealed assets in their prior dissolution proceeding. The plaintiff brought claims against the husband for fraud, conversion, and to set aside the dissolution judgment. (*Id*. at p. 828.) The court sustained the husband's demurrer to the fraud and conversion claims because such tort claims were barred by the litigation privilege. Instead, the plaintiff's "remedy [was] limited to an action or motion to vacate the judgment." (*Id*. at p. 834.) Likewise, Bonni may pursue a claim to rescind the St. Joseph settlement but all tort claims based on the settlement negotiations are barred.

Bonni also argues the settlement negotiations preceded the filing of any lawsuit, and, consequently, they are only privileged if the Hospitals were contemplating filing a future lawsuit in good faith. (See *Action Apartment Assn., Inc. v. City of Santa Monica*, *supra*, 41 Cal.4th at p. 1251). His argument relies on a portion of *Bonni*, in which our Supreme Court stated for anti-SLAPP purposes that the claims at issue arose "out of settlement negotiations *preceding* the filing of any suit." (*Bonni*, *supra*, 11 Cal.5th at pp. 1024-1025, italics added.) But, as discussed above, the anti-SLAPP statute and the litigation privilege are not identical. The latter expressly extends to communications made "in the . . . course of any . . . proceeding authorized by law and reviewable" by administrative mandate (Civ. Code, § 47, subd. (b)), which includes medical peer review proceedings (*Kibler*, *supra*, 39 Cal.4th at pp. 198-199). Because the settlement negotiations occurred within the course of a proceeding covered by Civil Code section 47, subdivision (b), they are privileged. It is immaterial that they preceded the filing of any lawsuit in a judicial forum.

Besides, even if the litigation privilege did not apply to the settlement-based retaliation claims, Bonni has not cited any evidence showing St. Joseph defendants unduly influenced him or defrauded him into signing the St. Joseph settlement. His declaration, which appears to be the only evidence submitted in opposition to the anti-

17

SLAPP motion, does not contain any facts supporting either theory.  It only contains conclusory statements that the Hospitals "[f]raudulently induce[d] and/or coerc[ed] [Bonni]" or "[e]xercis[ed] undue influence over [Bonni] to force [him] to enter into" the St. Joseph settlement.  These statements are insufficient to show either claim has minimal merit.

### 4. *Failure to use reporting language from St. Joseph settlement*

Bonni's final claim alleges the St. Joseph defendants retaliated against him by failing to use the agreed upon reporting language to the Medical Board of California and the National Practitioner Data Bank in breach of the St. Joseph settlement (claim viii).  As discussed above, these reports are absolutely privileged under Civil Code section 47, and Bonni cannot bring tort claims based upon them.  (See, e.g., *Joel v. Valley Surgical Center*, *supra*, 68 Cal.App.4th at pp. 371-372.)

As with his other report-based claim, Bonni contends this retaliation claim is based on noncommunicative conduct.  Again, this argument is unpersuasive.  The claim at issue asserts the St. Joseph defendants retaliated against Bonni "by failing to use the specific language as agreed upon by the parties" in the St. Joseph settlement.  Put differently, Bonni asserts the Hospitals' reports to the relevant agencies should have contained different language.  Thus, the gravamen of this claim expressly focuses on the contents of the reports at issue, not on noncommunicative conduct.

We are also unpersuaded by Bonni's argument that the litigation privilege does not apply to breaches of contracts relating to speech.  The claim at issue is not a breach of contract claim.  It is a retaliation claim, which is allegedly evidenced by a breach of the St. Joseph settlement.  Indeed, Bonni asserts a separate breach of contract claim based on the same conduct that is not at issue here.  While the litigation privilege does not generally apply to breach of contract claims (*Crossroads Investors, L.P. v.*

18

*Federal National Mortgage Assn.* (2017) 13 Cal.App.5th 757, 787),[4] the same is untrue for tort claims. Courts have consistently emphasized the privilege, when applicable, is absolute and precludes *all* tort theories of recovery except malicious prosecution. (*People v. Persolve, LLC* (2013) 218 Cal.App.4th 1267, 1274; *Wise v. Thrifty Payless, Inc.* (2000) 83 Cal.App.4th 1296, 1302-1303.) Though Bonni's retaliation claim relates to a breach of contract, it is not a breach of contract claim and is barred by the litigation privilege.

## III

## DISPOSITION

The Hospitals filed their anti-SLAPP motion in April 2015. At the time, they justifiably believed they could only direct their motion to Bonni's entire retaliation cause of action as pleaded. (See *Baral v. Schnitt*, *supra*, 1 Cal.5th at pp. 381-382.) However, following *Baral*, courts now generally disregard pleaded causes of action when reviewing anti-SLAPP motions. Instead, they analyze individual claims, i.e., "each act or set of acts supplying a basis for relief." (*Bonni*, *supra*, 11 Cal.5th at p. 1010.) Based on pre-*Baral* law, the trial court granted the Hospitals' anti-SLAPP motion as to Bonni's entire cause of action for retaliation. This conclusion is no longer correct, as each of Bonni's individual retaliation claims must be scrutinized. Under this analysis, both sides have prevailed to some extent. Our Supreme Court found the majority of Bonni's retaliation claims are not subject to the anti-SLAPP statute because they do not arise from protected activity. (*Bonni*, at pp. 1015-1017, 1026.) As to the eight remaining claims

---

[4] Courts have found the litigation privilege can bar breach of contract claims "if the agreement does not 'clearly prohibit' the challenged conduct, and if applying the privilege furthers the policies underlying the privilege." (*Crossroads Investors, L.P. v. Federal National Mortgage Assn.*, *supra*, 13 Cal.App.5th at p. 787.)

that do arise from protected activity, we find they are covered by the litigation privilege and thus barred by the anti-SLAPP statute.

We recognize the Hospitals' anti-SLAPP motion did not argue the litigation privilege applied to Bonni's retaliation cause of action. Therefore, the trial court was never given the opportunity to consider this issue.[5] We also acknowledge Bonni's argument that he did not intend for all of the eight claims at issue to be affirmative claims for relief. Rather, he contends the allegations underlying these claims were included for context. While these factors do not change our disposition, we believe they warrant consideration should either side move for attorney fees.

Based on our findings above, the trial court's order granting the Hospitals' anti-SLAPP motion is reversed. We direct the trial court on remand to enter a new order granting the motion as to the eight retaliation claims at issue and denying it as to the remaining retaliation claims per *Bonni*, *supra*, 11 Cal.5th at pages 1026-1027. Though these claims are to be stricken from Bonni's pleading, "[t]hat does not mean the underlying factual allegations may not be mentioned in the course of any ensuing proceedings; to the extent Bonni does consider these allegations to be probative of defendants' motives or relevant to any other claims that survive, statements made in the course of peer review proceedings remain as admissible as any others. . . . [But] Bonni may no longer seek to impose liability on defendants for having engaged in these protected acts." (*Bonni*, at p. 1019.)

---

[5] Neither side's failure to address the litigation privilege in the lower court was unreasonable, as it had little relevance to Bonni's entire retaliation cause of action as pleaded. We exercise our discretion to consider this issue on appeal. (*POET, LLC v. State Air Resources Bd.* (2013) 218 Cal.App.4th 681, 750-751 [appellate courts have discretion to consider issues of law first raised on appeal]; *Nguyen v. Proton Technology Corp.* (1999) 69 Cal.App.4th 140, 147 [application of the litigation privilege is an issue of law].)

Each party shall bear their own costs on this appeal.


MOORE, ACTING P. J.

WE CONCUR:


SANCHEZ, J.


MARKS, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ARAM BONNI,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>ST. JOSEPH HEALTH SYSTEM et al.,<br><br>Defendants and Respondents. | G052367<br><br>(Super. Ct. No. 30-2014-00758655)<br><br>ORDER GRANTING REQUEST FOR PUBLICATION; NO CHANGE IN JUDGMENT |

Attorney Barry S. Landsberg of Horvitz & Levy, Attorney Darren A. Schweitzer of Manatt, Phelps & Phillips, LLP, and Attorney Jeffrey E. Raskin of Greines, Martin, Stein & Richland, LLP (GMSR), all nonparties, have requested that our opinion, filed on August 23, 2022, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.

The opinion is ordered published in the Official Reports.


MOORE, ACTING P. J.

WE CONCUR:


SANCHEZ, J.


MARKS, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

2